**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| NGK METALS CORPORATION, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:04-cv-0056 |
| | ) | (Judge R. Allan Edgar) |
| NATIONAL UNION FIRE INSURANCE CO. | ) | |
| OF PITTSBURGH, PA and AMERICAN HOME | ) | |
| ASSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT AMERICAN HOME ASSURANCE COMPANY'S RESPONSE TO NGK METALS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST NGK METALS CORPORATION

H. Frederick Humbracht, Jr.
Boult, Cummings, Conners & Berry
1600 Division Street, Suite 700
Nashville, TN 37203
Tel:    (615) 252-2371
Fax:    (615) 252-6371

Of Counsel
Richard H. Nicolaides, Jr.
Jonathan T. Viner
Bates & Carey LLP
191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
Tel:    (312) 762-3100
Fax:    (312) 762-3200

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. UNDISPUTED FACTS ........................................................................................2

    A.    The Allegations Against NGK ................................................................2

    B.    The American Home Policies ..................................................................4

III. ARGUMENT .......................................................................................................6

    A.    Tennessee Law Applies to Determine Coverage Under the American Home Policies ..........................................................................6

    B.    American Home is Not Obligated to Defend NGK Because the Allegations Asserted by Cleveland Do Not Potentially Involve Personal and Advertising Injury under the American Home Policies ....................................................................................................7

        1.    Cleveland Does Not Allege Injury Arising Out of Any of the Enumerated Personal and Advertising Injury Offenses ........................8

            a)    Cleveland Does Not Allege Injury Arising Out of the Offense of "The Use of Another's Advertising Idea in Your 'Advertisement'" ........................................8

                (1)    Cleveland Does Not Allege that NGK Used Any of its Advertising Ideas ...................................8

                (2)    Cleveland Does Not Allege That its Trademarks Were Used by NGK in an "Advertisement" of NGK's Goods, Products or Services ................................10

            b)    Cleveland Does Not Allege that NGK Infringed on its Trade Dress ...........................................................16

        2.    Cleveland Does Not Allege that NGK Placed Any Infringing Material "In" an Advertisement .................................................17

        3.    Even if the Underlying Lawsuit Seeks Damages for Personal and Advertising Injury, Coverage for the Underlying Lawsuit is Excluded .................................................................19

            a)    The Criminal Acts Exclusion in the 1999-2002 American Home Policies Precludes Coverage for the Underlying Lawsuit ....................................................19

b) The 2002-03 American Home Policy Excludes Coverage for Injury Arising out of Trademark Infringement ................................................................................. 20

C. Cleveland's Negligence Allegation Does Not Require American Home to Defend Because Negligence Does Not Potentially Implicate Coverage Where No Covered Injury is Alleged .................................. 20

D. The November 26, 2002 Claim Handler's Activity Note is Irrelevant .............................................................................................................. 21

E. The Issue of American Home's Duty to Indemnify, if any, is Premature .............................................................................................................. 22

IV. CONCLUSION ............................................................................................................. 23

# Table of Authorities

T.C.A. § 56-7-102 ……………………………………………………………………….. 6, 7

28 U.S.C. §1332(c)(1) …………………………………………………………………… 6

15 U.S.C. 1114 …………………………………………………………………………...15

*Advance Watch Co., Ltd. v. Kemper National Ins. Co.*, 99 F.3d 795 (6th Cir. 1996) ………………………………………………………………………. 9, 10, 18

*Allstate Ins. Co. v. Barron*, 848 A.2d 1165 (Conn. 2004) ……………………………... 19

*Allstate Ins. Co. v. Gravine*, 1988 WL 192414 (Pa. Com. Pl. December 15, 1988) …... 21

*Applied Bolting Technology Products, Inc. v. U.S.F&G. Co.*, 942 F.Supp. 1029 (E.D.Pa. 1996) …………………………………………………………………………… 9

*Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 528 N.W.2d 486 (Ct. App. Wis. 1995) …………………………………………………………………………..…… 15

*Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000), *app. den.* (2000) …… 15

*Callas Enterprises, Inc. v. Travelers Indem. Co. of America*, 193 F.3d 952 (8th Cir. (Minn.) 1999) …………………………………………………………………………... 9

*CAT Internet Services, Inc. v. Providence Washington Ins. Co.*, 333 F.3d 138 (3d Cir. (Pa.) 2002) …………………………………………………………………..……… 9, 14

*Century 21, Inc. v. Diamond State Ins. Co.*, 2004 WL 1117897, (S.D.N.Y. May 18, 2004) …………………………………………………………………...…… 11

*Chatton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 10 Cal.App.4[th] 846, 13 Cal.Rptr.2d 318 (Cal. App. 1 Dist. 1992) …………………………………………… 22

*Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004) …………………….....7

*Diversified Investments Corp. v. Regent Ins. Co.*, 596 N.W.2d 502 (Wis. App. 1999) ………………………………………………………………………... 14

*Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. Ct. App. 1996) … 7, 8, 22

*Edgington v. Edgington*, 162 S.W.2d 1082 (Tenn. 1942) …………………………….… 7

*EKCO Group, Inc. v. The Travelers Indem. Co. of Ill.*, 273 F.3d 409 (1st Cir. 2001) …..……………………………………………………………………….. 10, 12, 18

*Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363 (Pa. 1987) ………………… 21

*In re Estate of J.D. Davis*, 2004 WL 1950729 (Tenn. Ct. App. Sept. 2, 2004) ………… 7

*Farmington Cas. Co. v. Cyberlogic Technologies, Inc.*, 996 F.Supp. 695 (E.D. Mich. 1998) …………………………………………………………………………………… 14

*The Frog, Switch & Manufacturing Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. (Pa.) 1999) …………………………………………………………...…. 9, 14

*Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192 (3d Cir. 2004) …………………….. 17

*I. Appel Corporation v. St. Paul Fire & Marine Ins. Co.*, 930 S.W.2d 550, 552 (Tenn. Ct. App. 1996) …………………………………………………………………… 8

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. (Cal.) 1993) ………………………………………………………………………………... 16

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. (N.Y.) 1995) ……………………………………………………………………………….. 16

*Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. (Mich.) 2003) ………………………………………………………………………………….. 20

*Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332 (6th Cir. (Mich.) 1994) …………………………………………………………………... 20

*Peerless Lighting Corp. v. American Motorists Ins. Co*, 82 Cal. App. 4th 995, 98 Cal. Rptr. 2d 753 (Cal. App. 1 Dist. 2000) ……………………………………………….… 13

*Policeman's Ben. Assn. of Nashville v. Nautilus Ins. Co.*, 2002 WL 126311, *8 (Tenn. Ct. App. Feb. 1, 2002) ……………………………………………………………. 22, 23

*Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297 (9th Cir. (Cal.) 1994) …….. 16

*Scottsdale Ins. Co. v. MV Transportation, Inc.*, 2004 WL 726816 (Cal. App. 2 Dist. Feb. 23, 2004) …………………………………………………………………….. 12

*Sholodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256 (6th Cir. (Tenn.) 1999) …… 8, 9

*Sorbee International LTD v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa. Super. 1999) …………………………………………………………………. 9, 14, 15

*Sport Supply Group, Inc. v. Columbia Casualty Co.*, 355 F.3d 453 (5th Cir. (Tex.) 2003) ………………………………………………………………………………... 13

*Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 978 S.W.2d 1 (Tenn. Ct. App. 1998) ……………………………………………………………………………… 6, 7, 10

*Superformance Intern., Inc. v. Hartford Cas. Ins. Co.*, 203 F.Supp.2d 587 (E.D.Va. 2002) ……………………………………………………………………………………... 17

*Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F. 3d 215 (4th Cir. (Va.) 2003) ……………………………………………………………………………………... 20

*Transcontinental Ins. Co. v. Jim Black & Assoc.*, 2004 WL 2599372 (Fla. App. 2d Dist. Nov. 17, 2004) ……………………………………………………………………………. 11

*Vanguard Ins. Co. v. McKinney*, 459 N.W.2d 316 (Mich. App. Ct. 1990) ……………... 21

*Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000) ……………... 21

*Westfield Cos. v. O.K.L Can Line*, 804 N.E.2d 45 (Ohio App. [1st Dist.] 2003) ……….. 11

Now comes defendant, American Home Assurance Company ("American Home") and, in response to NGK Metals Corporation's Motion for Summary Judgment, and for its Cross-Motion for Summary Judgment, states as follows:

## I.       INTRODUCTION

This is an insurance coverage dispute.  NGK Metals Corporation ("NGK") has been sued by Roger Cleveland Golf Company, Inc. ("Cleveland") for trademark infringement, conversion, and negligent supervision, which allegedly occurred in Tennessee.   Specifically, Cleveland alleges that NGK's employees and former employees manufactured golf club heads and golf clubs bearing Cleveland's trademark without Cleveland's authorization.    Cleveland seeks recovery for damages resulting from the unauthorized production and use of golf club heads and golf clubs bearing its trademarks that were sold, distributed and provided to NGK's customers as gifts.  The issue before this court is whether the claims asserted by Cleveland potentially involve "personal and advertising injury" under certain American Home policies issued to NGK and, specifically, whether Cleveland's claims involve injury arising out of "the use of another's advertising idea in your advertisement" or "infringing upon another's copyright, trade dress or slogan in your advertisement."

American Home is not obligated to defend NGK, because the allegations asserted by Cleveland do not potentially involve "personal and advertising injury" coverage under the American Home policies as a matter of law.  Cleveland does not allege injury arising out of the offense of "use of another's advertising idea in your advertisement."  Cleveland's trademark is not an advertising idea and Cleveland does not allege that its trademark was used by NGK in an "advertisement" by NGK for its goods, products, or services.  In addition, Cleveland does not allege that NGK infringed upon its copyright, trade dress, or slogan in an "advertisement" for NGK's goods, products or services.  Even if Cleveland's claims were construed to involve

"personal and advertising injury," coverage is precluded by an exclusion for "personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured. The wrongful conduct which gives rise to Cleveland's claims against NGK resulted in criminal investigations and charges against NGK employees and former employees, who subsequently pled guilty to felony theft charges and received 8-year sentences. Furthermore, one of the American Home policies specifically excludes coverage for trademark infringement liability. Finally, NGK's request for indemnification under the American Home policies is premature. As a matter of law, American Home is not obligated to indemnify NGK at this time as NGK is not legally obligated to pay, as damages, sums because of "personal and advertising injury" to which the American Home policies apply.

For these reasons, which are discussed in detail below, NGK's Motion for Summary Judgment should be denied and the Court should enter an order that the American Home policies do not afford coverage for NGK in the underlying lawsuit.

## II.    UNDISPUTED FACTS

### A.    The Allegations Against NGK

NGK is a defendant in a lawsuit captioned *Roger Cleveland Golf Company, Inc. v. NGK Metals Corporation*, pending in this Court ("the underlying lawsuit"). NGK allegedly owns and performs substantial business at a property located in Sweetwater, Tennessee. (Complaint ¶ 7.) Cleveland is in the business of designing and manufacturing golf clubs, which it sells in the United States and abroad. (Complaint ¶¶ 9-10.) Cleveland occasionally contracts with other companies to assist in the production of golf club heads. (Complaint ¶ 11.)

Cleveland allegedly identifies golf clubs that it has manufactured by imprinting on the golf clubs one or more federally-registered trademarks in such a manner that they are easily visible on the exterior of the golf club head. (Complaint ¶ 13.) Cleveland alleges that three of its

trademarks are at issue: (1) "Tour Action"; (2) "Cleveland" in script; and (3) a stylized diamond-shaped design. (Complaint ¶ 13, Exh. "A".) NGK is in the business of manufacturing beryllium-containing metals, including beryllium copper and beryllium nickel. (Complaint ¶ 21.)

In or about 1996, Cleveland and NGK allegedly entered into a business relationship for the research and development of beryllium golf club heads and, later that year, Cleveland contracted with NGK to produce golf club heads bearing Cleveland's federally-registered trademarks. (Complaint ¶¶ 22, 23.) At the end of 1997, Cleveland allegedly terminated its relationship with NGK and, since that time, has not requested that NGK produce any golf club heads. (Complaint ¶ 26.) It is alleged that, at that time, Cleveland specifically instructed NGK to destroy club heads that were not purchased by Cleveland. (Complaint ¶ 27.) On or about December 14, 2000, Cleveland allegedly received an e-mail message from a former NGK employee, David Brady, which states as follows:

> I am a former employee of NGK Metals, Corp. During my employment, I was told to put away 1000 of the BeNi Sandwedges; (S)(D) (L), so that they may be given as gifts to our customers, acquaintances, etc. Since I no longer work for NGK, I was wondering if you might be interested in purchasing these Sand Wedges from me individually.

(Complaint ¶¶ 28-29; Exhibit to Declaration of H. Frederick Humbracht, Jr., filed herewith.) Subsequent investigation allegedly revealed that, following the termination of the Cleveland-NGK contract, Brady and other NGK employees, at the instruction of NGK's plant manager, John Manikas ("Manikas"), continued to produce Cleveland golf club heads and also produced finished Cleveland golf clubs. (Complaint ¶¶ 31-32.)

Cleveland alleges that NGK was not authorized to continue producing Cleveland heads and was not authorized to produce finished golf clubs using those golf club heads. Manikas, on

behalf of NGK, allegedly ordered NGK employees to produce unauthorized Cleveland golf club heads and golf clubs, both at and away from NGK's facility. (Complaint ¶¶ 35-37.) It is alleged that NGK had knowledge of and allowed Manikas' continued production, finishing and use of Cleveland golf club heads for his and NGK's benefit, either through sale or distribution. In addition, NGK allegedly allowed Manikas to give counterfeit Cleveland golf clubs to his friends and to NGK customers as gifts for their continued business with NGK. (Complaint ¶¶ 39-40.)

In its Declaratory Judgment Complaint, NGK states that David Brady and John Manikas, its employees, pleaded guilty to felony theft in April and June 2002, respectively. (NGK's Complaint ¶¶ 17, 18.)

### B. The American Home Policies

American Home issued commercial general liability policies to NGK Metals Corporation with the following policy numbers and effective dates (collectively, the "American Home Policies"): (1) Policy No. GL 612-25-36, effective January 1, 1999 to January 1, 2000 ("the 1999-00 American Home Policy"); (2) Policy No. GL 612-25-36RA, effective January 1, 2000 to January 1, 2001 ("the 2000-01 American Home Policy"); (3) Policy No. GL 612-25-36RA, effective January 1, 2001 to January 1, 2002 ("the 2001-02 American Home Policy"); and (4) Policy No. GL 612-25-36RA, effective January 1, 2002 to January 1, 2003 ("the 2002-03 American Home Policy"). The American Home Policies contain the following insuring agreement:

1.    Insuring Agreement

a.    We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking

damages for "personal and advertising injury" to which this insurance does not apply….

b. This insurance applies to:

"personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

The American Home policies contain the following definitions:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

* * *

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

* * *

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

* * *

The 1999-00, 2000-01 and 2001-02 American Home Policies provide no coverage for:

(4) "Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured;

In addition, the 2002-03 American Home Policy excludes coverage for:[1]

---

[1] In its Motion, NGK argues that the 2000-01, 2001-02 and 2002-03 American Home Policies contain this exclusion. Based on the American Home Policies' schedule of forms, however, only the 2002-03 Policy contains this exclusion.

i.      Infringement of Copyright, Patent, Trademark or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

\*      \*      \*

## III.    ARGUMENT

### A.    Tennessee Law Applies to Determine Coverage Under the American Home Policies

Tennessee law applies to determine American Home's coverage obligations.  T.C.A. § 56-7-102 provides, in relevant part:

> Every policy of insurance, issued to or **for the benefit of** any citizen or resident of this state … shall be held as made in this state and construed solely according to the laws of this state.

(Emphasis added.)  NGK's principal place of business is in Tennessee.  (NGK's Complaint ¶ 2).  Thus, NGK is a Tennessee resident.[2]  The alleged conduct by NGK and its employees occurred at NGK's facilities in Tennessee.  The American Home Policies thus constitute policies that were issued for the benefit of a Tennessee resident.[3]  Under T.C.A. § 56-7-102, therefore, Tennessee law applies to determine American Home's obligations with respect to the underlying lawsuit.[4]

---

[2]  For instance, for purposes of the diversity jurisdiction requirements in 28 U.S.C. §1332(c)(1), a corporation is a citizen of the state in which it maintains its principal place of business.

[3]  In his Declaration, Yasuhito Niwa states that NGK moved its headquarters and principal operations to Tennessee, but fails to state when the move occurred.  Based on the complaint, it is apparent that NGK maintained significant, if not principal, operations in Tennessee during the effective dates of the American Home Policies.  NGK's principal operations therefore appear to have been located in Tennessee on dates that the American Home Policies were issued, requiring the application of T.C.A. § 56-7-102.

[4]  In *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 978 S.W.2d 1, n.1 (Tenn. Ct. App. 1998), moreover, the Tennessee Court of Appeals acknowledged the Tennessee Supreme Court's rejection of the *lex loci* approach to choice-of-law determinations in tort

It is also established Tennessee law that, where the parties envision performance of a contract in a particular place, the rule of *lex loci* does not apply and the court will apply the law of the place of performance. *In re Estate of J.D. Davis*, 2004 WL 1950729, *2 (Tenn. Ct. App. Sept. 2, 2004); *Edgington v. Edgington*, 162 S.W.2d 1082, 1085-86 (Tenn. 1942); *Cooper v. MRM Investment Co.*, 367 F.3d 493, 499 (6th Cir. 2004). NGK maintained significant, if not principal, operations in Tennessee during the effective dates of the American Home Policies. Thus, the parties necessarily contemplated that American Home would most likely be called upon to perform its obligations in Tennessee, such as defending a suit filed in a Tennessee court. Again, therefore, Tennessee law properly applies to determine coverage for NGK under the American Home Policies. NGK's argument, that Pennsylvania law applies, ignores the relevant Tennessee statute and decisions.[5]

In any event, however, what state's law applies is not dispositive. Regardless what state's law is applied, the underlying lawsuit fails to potentially implicate coverage under the American Home Policies and, therefore, American Home has no duty to defend.

**B.** **American Home is Not Obligated to Defend NGK Because the Allegations Asserted by Cleveland Do Not Potentially Involve Personal and Advertising Injury under the American Home Policies**

The scope of the court's inquiry in determining an insurer's obligation to defend is confined exclusively to the allegations in the pleadings. *Drexel Chem. Co. v. Bituminous Ins.*

---

actions, reasoning that the *lex loci* approach is outmoded and irrelevant, and the Court's adoption of the "most significant relationship" approach, as set forth in the Restatement (Second) of Conflicts. The *Chester O'Donley* court indicated that discarding the "lex loci" approach in the contract context would be consistent with that decision and the provisions of the Restatement.

[5] NGK argues that certain endorsements to the policies (entitled "Pennsylvania Notice" and "Pennsylvania Changes – Cancellation and Nonrenewal") require the application of Pennsylvania law. However, neither endorsement contains any language to this effect. Furthermore, NGK fails to cite authority for the proposition that either endorsement requires the application of Pennsylvania law.

*Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). Language contained in an insurance policy, moreover, should be given its usual, natural and ordinary meaning. *I. Appel Corporation v. St. Paul Fire & Marine Ins. Co.,* 930 S.W.2d 550, 552 (Tenn. Ct. App. 1996). An insurance contract should be afforded a sensible construction that is consonant with the object and plain intention of the parties. *Id.* at 553.

The American Home Policies provide coverage for sums that an insured becomes legally obligated to pay as damages because of "personal and advertising injury" as defined, if such injury or damage is not otherwise excluded from coverage. The American Home Policies define "personal and advertising injury," in relevant part, as injury arising out of one or more enumerated offenses, including "use of another's advertising idea in your 'advertisement'" or "infringing upon another's copyright, trade dress or slogan in your 'advertisement'." Cleveland does not allege damages for injury arising out of either offense. Furthermore, the criminal acts and trademark infringement exclusions in the American Home Policies preclude coverage with regard to the underlying lawsuit.

**1. Cleveland Does Not Allege Injury Arising Out of Any of the Enumerated Personal and Advertising Injury Offenses**

**a) Cleveland Does Not Allege Injury Arising Out of the Offense of "The Use of Another's Advertising Idea in Your 'Advertisement'"**

This offense is not implicated because Cleveland's trademarks are not advertising ideas and Cleveland does not allege that its trademarks were used by NGK in an "advertisement" for NGK's goods, products or services.

**(1) Cleveland Does Not Allege that NGK Used Any of its Advertising Ideas**

Under the applicable law, Cleveland's trademarks do not constitute advertising ideas. In *Sholodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256 (6th Cir. (Tenn.) 1999), the Sixth

Circuit Court of Appeals, applying Tennessee law, squarely rejected the insured's argument that a claim for service mark infringement alleged injury arising out of the offense of "misappropriation of advertising ideas."  The *Sholodge* court followed the decision in *Advance Watch Co., Ltd. v. Kemper National Ins. Co.*, 99 F.3d 795 (6th Cir. 1996) (applying Michigan law).  Based on *Sholodge*, under Tennessee law, a trademark does not qualify as an "advertising idea."[6]

The decisions that NGK cites in support of its argument to the contrary are of no avail. Except for one, those decisions hold only that the particular material at issue did not, in fact, qualify as an "advertising idea."  *See, e.g., Sorbee International LTD v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa. Super. 1999) (use of straightforward, descriptive terms for products does not allege misappropriation of "advertising ideas").[7]  Furthermore, the holding in *CAT Internet Services, Inc. v. Providence Washington Ins. Co.*, 333 F.3d 138 (3d Cir. (Pa.) 2002), that trademarks constitute "advertising ideas," is mere *dicta*, because there is no indication in the court's decision that the language at issue – the domain name Magazines.com – was trademarked.

---

[6]  The *Sholodge* court noted with approval the reasoning in *Advance Watch*, which held that trademark infringement claims are common and distinct and, had insurers intended to provide coverage for such claims, they surely would have done so expressly.  *Advance Watch, supra* at 803.  Other courts have also recognized that trademark claims are not covered under the rubric of "advertising ideas."  *See, e.g., Callas Enterprises, Inc. v. Travelers Indem. Co. of America*, 193 F.3d 952 (8th Cir. (Minn.) 1999).

[7]  See also *Applied Bolting Technology Products, Inc. v. U.S.F&G. Co.*, 942 F.Supp. 1029 (E.D.Pa. 1996), *aff'd*, 118 F.3d 1574 (3d Cir. 1997) (where competitor had no rights to the offending language, no "advertising injury" alleged); *The Frog, Switch & Manufacturing Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. (Pa.) 1999) (no "advertising ideas" at issue where insured allegedly misappropriated trade secrets relating to product design and subsequently advertised the resulting product).

NGK argues that the exclusion for trademark infringement claims, contained in the 2002-03 American Home Policy, requires a finding that the prior policies, which do not contain that exclusion, provide coverage for trademark infringement claims. NGK cites no authority to support its argument. Moreover, courts have consistently rejected similar arguments. For example, in *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, *supra*, the court noted that an insurance policy's insuring agreement sets the "outer limits" of an insurer's liability. *Id.* at 7. While exclusions help define and shape the scope of coverage, they "can only decrease coverage." *Id.* at 8.[8]

**(2)    Cleveland Does Not Allege That its Trademarks Were Used by NGK in an "Advertisement" of NGK's Goods, Products or Services**

Even if the underlying lawsuit is construed to seek damages for NGK's use of an "advertising idea," there is no coverage under the American Home Policies, because those policies provide coverage for the "use of another's advertising idea" only if it occurs in the insured's "advertisement."[9] The American Home Policies define "advertisement" to mean "a notice that is broadcast or published to the general public or specific market segments about your

---

[8]    Likewise, in *Advance Watch*, the Sixth Circuit held that "the absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage for liability for the kind of occurrence or injury alleged by the claimant against the insured." 99 F.3d 795, 805. Similarly, in *EKCO Group, Inc. v. The Travelers Indem. Co. of Ill.*, 273 F.3d 409 (1st Cir. 2001) (applying New Hampshire law), the court recognized that, despite a subsequent change in "advertising injury" provisions of the relevant industry form after the issuance of the policy at issue, the court could not infer "advertising injury" coverage under the policy at issue based only on that change. The court acknowledged that such change is not relevant to the question of coverage, holding that "expression can always be made clearer and to change language in a policy is simply a precaution against recurrent misunderstanding." *Id.* at 415.

[9]    The specific language at issue is "use of another's advertising idea *in your 'advertisement'*." (Emphasis added). The American Home Policies specifically define "your" to mean the Named Insured in the Declarations and any other entity qualifying as a Named Insured – i.e., NGK, but not others, such as NGK's current or former employees.

goods, products or services for the purpose of attracting customers or supporters." The term "notice" is defined, in relevant part, as an "announcement." (Merriam Webster 2005). The definition of "broadcast" is "cast or scattered in all directions; made public by means of radio or television; of or relating to radio or television" and "published" is defined to mean "to make generally known; to make public announcement of; to disseminate to the public." (Merriam Webster 2005). Cleveland does not allege that NGK "broadcast" or "published" any "notice" as part of any effort to sell or distribute its own goods, products or services, either to the "general public" or to "market segments."

It is alleged that NGK's employees sold or distributed some of the clubs and that some of the clubs were given to NGK clients as gifts. Courts have unanimously concluded, however, that to allege "advertisement," as defined in the American Home Policies, "require[s] more than just stating that the infringer's use of another's" protected materials "was likely to cause confusion to the consumer or to deceive the consumer as to the origin or manufacturer of the goods." *Westfield Cos. v. O.K.L Can Line*, 804 N.E.2d 45, 51 (Ohio App. [1st Dist.] 2003).[10] Such courts have recognized that the definition of "advertisement" further requires the existence of a "notice" intended to attract customers. *Id.*[11]

---

[10]   We note that the facts at issue in *O.K.L. Can Line* are distinguishable from those at issue here. Thus, in *O.K.L. Can Line*, the claimant attached to its complaint a copy of an internet "web page" depicting the allegedly infringing product for sale. *Id.* at 51. The fact that the *O.K.L. Can Line* found the underlying lawsuit to involve "advertisement" therefore does not require such a holding here.

[11]   *See, e.g., Transcontinental Ins. Co. v. Jim Black & Assoc.*, 2004 WL 2599372 (Fla. App. 2d Dist. Nov. 17, 2004) (although the insured allegedly engaged in demonstration of an allegedly-infringing product, and claimant sought to prohibit "promotion" of product, there was no allegation of injury as a result of any notice that was broadcast or published; held, there was no "advertisement" and thus no "advertising injury" coverage); *Century 21, Inc. v. Diamond State Ins. Co.*, 2004 WL 1117897, *4 (S.D.N.Y. May 18, 2004) (holding that, as a matter of law, merely selling an item does not constitute "advertising" as that term is used in an insurance policy and, thus, trademark infringement claim did not implicate advertising injury coverage);

It is also alleged that a former NGK employee sent an e-mail to Cleveland advising that NGK had manufactured Cleveland golf clubs and offered to sell them to Cleveland. An e-mail from a former NGK employee to a single "customer," however, is not a "notice" that was either "broadcast" or "published," because it does not involve radio, television, print ads or the like and because it does not involve any kind of announcement.

Furthermore, Cleveland does not allege that any of NGK's "advertisement" was directed at the "general public or specific market segments." The terms "general public" or "specific market segments" contemplate mass advertising, not a series of one-on-one customer contacts. *See, e.g., Scottsdale Ins. Co. v. MV Transportation, Inc.*, 2004 WL 726816, *4-5 (Cal. App. 2 Dist. Feb. 23, 2004) (rejecting insured's argument that its focused and sequential approach to customers constituted "advertisement," defined to mean notice that is broadcast or published to "general public" or "specific market segments"). The mere allegation that NGK's employees sold, distributed or gave away infringing clubs is insufficient to constitute "advertisement," because there is no allegation whatsoever that such conduct was directed toward the "general public" or "specific market segments." *Id.* A single e-mail sent to one party, of course, can not be considered to have been published or broadcast to either the "general public" or "specific market segments."[12]

---

*EKCO Group, Inc. v. The Travelers Indem. Co. of Ill.*, *supra* at 414 (to define advertising to mean any form of calling public attention would be to "stretch the term … in a way that has no natural stopping point short of absurd results").

[12] Thus, it is unnecessary for the court to consider NGK's misplaced argument, that an e-mail by its former employee could constitute "advertisement" merely because it is electronic communication. At any rate, the 2002-03 American Home Policy defines "notice" to include material placed on the Internet or on "similar electronic means of communication." This definition therefore refers to material "placed on the Internet" or upon an electronic means of communication similar to the Internet. An e-mail to a single entity clearly does not equate to placing material on the Internet or a similar electronic communications network.

An additional reason why Cleveland's claims do not implicate coverage is that Cleveland does not allege that any "advertisement" was by NGK or concerned NGK's goods, products or services. The underlying lawsuit concerns the conduct of NGK's employees, for which two NGK employees (John Manikas, NGK's former plant manager and David Brady, former employee) were criminally convicted. It therefore appears that the conduct for which Cleveland seeks to hold NGK liable was for the employees' own benefit and not for the benefit of NGK. As such, none of the "advertisement," if any, was by NGK.[13] Furthermore, it is not alleged in the underlying lawsuit, nor can that suit be construed to allege, that any "advertisement" was about NGK's goods, products or services. Furthermore, NGK is in the business of manufacturing beryllium-containing metals, not the sale of finished golf clubs.

NGK argues that, given the "large number of clubs involved," the court should simply assume that NGK broadcast or published notice, "on a broad scale," that the infringing clubs were for sale. However, Cleveland's complaint does not allege the number of infringing club heads or golf clubs that NGK's employees produced. NGK's argument, that the court should simply assume that it engaged in "advertisement," should be rejected.

NGK also argues that the court should simply assume that it engaged in "advertisement" because trademark infringement claims, by their very nature, ostensibly involve advertising activity. This argument has properly been rejected by most courts that have examined it. *See, e.g., Peerless Lighting Corp. v. American Motorists Ins. Co*, 82 Cal. App. 4th 995, 98 Cal. Rptr. 2d 753, 764-66 (Cal. App. 1 Dist. 2000).[14]

---

[13] On the other hand, as discussed in Section III.B.3.a, *infra*, if the underlying lawsuit is construed to allege that NGK's employees acted for NGK's benefit – i.e. within the scope of their employment – such employees qualify as "insureds" and the "criminal acts" exclusion in the 1999-2002 American Home Policies bars coverage.

[14] *Sport Supply Group, Inc. v. Columbia Casualty Co.*, 355 F.3d 453 (5th Cir. (Tex.)

The decisions that NGK cites to support its argument that it allegedly advertised, moreover, are distinguishable because they all construe materially different policy language. Indeed, *CAT Internet Services*, *supra*, does not stand for the proposition for which it is cited by NGK. The *CAT Internet* court addressed the issue of what is an advertising idea, but did not address the issue of whether the use of claimant's trademark occurred in the course of an insured's "advertisement." That decision therefore does not support NGK's argument that it allegedly engaged in "advertisement" as defined in the American Home Policies.[15]

Furthermore, the decision in *The Frog, Switch & Manufacturing Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. (Pa.) 1999), which NGK cites, undercuts NGK's argument. In *Frog, Switch*, the insured allegedly stole trade secrets relating to product design and profited from products manufactured utilizing the stolen information. The court held that the suit did not implicate "advertising injury" coverage. Like the insured in *Frog, Switch*, NGK and/or its employees produced and sold or distributed unauthorized products and, like in *Frog, Switch*, such allegations do not implicate "personal and advertising injury" coverage.

Likewise, the *Sorbee International* decision that NGK also cites in support of its arguments did not discuss whether the claim against the insured satisfied the "advertising" requirement in the policy at issue. Rather, the court focused solely on whether the insured's

---

2003); *Diversified Investments Corp. v. Regent Ins. Co.*, 596 N.W.2d 502 (Wis. App. 1999), *pet. for rev. den.* 602 N.W.2d 761, 228 Wis.2d 175 (1999). See also *Farmington Cas. Co. v. Cyberlogic Technologies, Inc.*, 996 F.Supp. 695 (E.D. Mich. 1998) (applying Michigan law) (rejecting argument that product served to advertise itself; holding that such an approach would unreasonably expand scope of a CGL policy's advertising injury coverage).

[15] The *CAT Internet* decision also is distinguishable factually, because the insured was specifically alleged to have utilized, on the internet, a domain name that was nearly identical to the claimant's, to divert the claimant's customers to its own websites. *Id*. at 139-40. The facts at issue in *CAT Internet* therefore involved infringement that potentially occurred "in the course of advertising," whereas the facts alleged against NGK do not involve "advertisement," as defined.

allegedly wrongful use of certain terms, such as "low calorie," "sugar free" or "fat free," constituted "advertising ideas." The *Sorbee* court found that the claims against the insured failed to even potentially implicate "advertising injury" coverage.[16]

NGK attempts to brush aside the differences between the policy language at issue here and the policy language at issue in the decisions it cites. Such an argument improperly suggests that the court may treat the American Home Policies' definition of "advertisement" as meaningless or superfluous.[17] Beyond that, the cases cited by NGK, which interpret distinguishable language, do not advance NGK's arguments.

NGK also argues that references in the Lanham Act to "advertising" and "advertisements" require a finding of coverage. This argument has no merit. The American Home Policies specifically define the term "advertisement" for purposes of defining the coverage provided. The Lanham Act does not define that term. The fact that the Lanham Act utilizes the terms "advertising" and "advertisements" thus does not change the meaning of the term "advertisement" as utilized in the American Home Policies. The mere fact that the Lanham Act authorizes recovery for certain conduct in the course of "advertising," therefore, does not require a finding that NGK engaged in "advertisement" under the American Home Policies.

Finally, NGK argues that the complaint can be construed to allege that NGK employees offered infringing Cleveland golf clubs for sale to the public over the internet. (See NGK's

---

[16] Similarly, in *Atlantic Mutual Ins. Co. v. Badger Medical Supply Co.*, 528 N.W.2d 486 (Ct. App. Wis. 1995), the court declined to find that the allegations implicated "advertising injury" coverage. The *Badger Medical* court discussed the meaning of the term "advertising," but did so in the context of construing the term "advertising idea," and not whether the undefined term "advertising" was satisfied by mere allegations of trademark infringement.

[17] *See, e.g., Burress v. Sanders*, 31 S.W.3d 259, 265 (Tenn. Ct. App. 2000), *app. den.* (2000) (implying that, under Tennessee law, courts must give meaning to every contractual term, rather than construe any term so as to render it meaningless).

Opening Brief, pp. 1, 5). This is simply inaccurate. In actuality, Cleveland alleges only that

NGK's plant manager engaged in the mere sale or distribution of infringing golf clubs and that a

former NGK employee e-mailed Cleveland to inquire whether it wished to purchase counterfeit

golf clubs that infringed its own trademark. In light of these allegations, the underlying lawsuit

clearly does not allege that NGK engaged in "advertisement" concerning its own goods or

products.

**b)**      **Cleveland Does Not Allege that NGK Infringed on its Trade Dress**

NGK also argues that the underlying lawsuit includes a claim for "trade dress"

infringement and thus involves injury arising out of the "personal and advertising injury" offense

of "infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

Specifically, according to NGK, the golf club heads that its employees improperly produced and

used are "part of Cleveland's product configuration" and thus Cleveland's claim necessarily

involves infringement of Cleveland's trade dress. NGK's argument displays a total

misapprehension of what constitutes "trade dress."

Trade dress has been held to include the design and appearance of a product, as well as

that of the container and all the elements making up the total visual image by which the product

is presented to customers. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d

Cir. (N.Y.) 1995). For purposes of the Lanham Act, moreover, "trade dress" is defined as the

overall image of the product as it is presented to consumer and includes aspects such as size,

shape, color or design. *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297 (9th Cir. (Cal.)

1994. In contrast to trademark, "trade dress" refers to the total image of a product and may

include features such as size, shape, color, color combinations, texture, or graphics.

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. (Cal.) 1993).

Cleveland does not allege that NGK infringed its trade dress. Cleveland does not allege that either its golf clubs or golf club heads are shaped distinctively or are distinctive in size, color, color combination, texture or overall appearance, and Cleveland's product packaging is not at issue. Rather, Cleveland's claims are based on the allegedly unauthorized production of golf clubs that bear Cleveland's trademarks on the face of the club head. Cleveland does not seek damages for infringement of its "trade dress." Indeed, Cleveland specifically seeks damages only for NGK's allegedly-infringing use of three trademarks, rather than for any use of the "total image" of any Cleveland product. The claims have nothing to do with trade dress.[18]

Even if Cleveland alleged trade dress infringement, however, that claim would not involve "personal and advertising injury" because, as discussed above, NGK did not engage in "advertisement" of any of its goods or products. As set forth below, moreover, even if Cleveland alleged that NGK used Cleveland's trademarks or trade dress and that NGK engaged in "advertisement" of allegedly-infringing products, there still would be no coverage, because Cleveland does not allege that NGK included any infringing materials "in" its "advertisement."

### 2. Cleveland Does Not Allege that NGK Placed Any Infringing Material "In" an Advertisement

To implicate coverage, an insured's "use of another's advertising idea" must be "in" the insured's "advertisement." In other words, "personal and advertising injury" coverage does not apply unless it is alleged that the "advertisement" itself, rather than some other conduct by the

---

[18] NGK cites *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192 (3d Cir. 2004) (applying New Jersey law) to support its argument that the underlying lawsuit involved a covered trade dress infringement claim. This decision is inapposite, however, as it addresses the issue of whether the claim against the insured involves infringement of a "trademarked title," a term not utilized in the American Home Policies. *See, e.g., Superformance Intern., Inc. v. Hartford Cas. Ins. Co.*, 203 F.Supp.2d 587 (E.D.Va. 2002), *aff'd on other grounds*, 332 F.3d 215 (4th Cir. (Va.) 2003) (insured's alleged copying of shape of competitor's licensed product did not constitute "advertising injury" where trade dress at issue was not primarily "nonfunctional").

insured, contained the offending advertising idea or trade dress. Unless the underlying lawsuit can be construed to allege that NGK's "advertisement" itself depicted or otherwise contained Cleveland's "advertising idea" or trade dress, therefore, there can be no coverage. Cf., *Advance Watch Co., Ltd*, *supra,* at 806 ("advertising injury" applied only where "caused by an offense committed in the course of advertising [the insured's] goods, products"; thus, insured was required to establish nexus between ground of asserted liability and insured's advertising activities); *EKCO Group, Inc. v. The Travelers Indem. Co. of Ill.*, *supra* (same).

The allegations in the underlying lawsuit fail to establish that the Cleveland trademarks appeared or were in any way included "in" an "advertisement" by NGK. Rather, the underlying lawsuit focuses on the injury caused by the alleged sale or distribution of golf clubs. Furthermore, Cleveland's prayer for relief contains no reference at all to advertisements or advertising or promotional material. Specifically, nowhere in its prayer for relief does Cleveland allege any advertisement by NGK or seek the return or destruction of any advertising materials. Instead, Cleveland seeks damages, as well as treble damages for willful conduct, based on the alleged production, sale and distribution of the clubs. Cleveland does not allege that any infringement occurred "in" an NGK "advertisement" and, therefore, the underlying lawsuit does not implicate "personal and advertising injury" coverage.

**3. Even if the Underlying Lawsuit Seeks Damages for Personal and Advertising Injury, Coverage for the Underlying Lawsuit is Excluded**

**a) The Criminal Acts Exclusion in the 1999-2002 American Home Policies Precludes Coverage for the Underlying Lawsuit**

The 1999-2002 American Home Policies bar coverage for "personal and advertising injury" arising out of the criminal act of "any insured." If the underlying lawsuit is construed as involving "personal and advertising injury" – which it should not be – coverage for such injury is necessarily barred under the 1999-2002 American Home Policies, as arising out of the criminal act of two or more persons qualifying as an "insured." The American Home Policies define the term "insured," in relevant part, as follows:

> a. Your ... "employees", ... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

> *        *        *

Cleveland alleges that NGK knowingly allowed its employees to produce counterfeit golf club heads and clubs at its facility and to sell or distribute those clubs. NGK admits, moreover, that two of its former employees pled guilty to criminal charges arising out of their conduct regarding the counterfeit clubs. To the extent that the complaint can be construed to allege that NGK was aware of and permitted such conduct and benefited from that conduct, the culpable employees were necessarily acting within the scope of their employment for NGK and qualify as "insureds" under the above-cited provision. This compels the conclusion that the criminal acts exclusion in the 1999-2002 American Home Policies operates to bar coverage with respect to the underlying lawsuit.[19] *See, e.g., Allstate Ins. Co. v. Barron*, 848 A.2d 1165, 1177 (Conn. 2004) (term

---

[19] Conversely, if the employees acted on their own, without NGK's knowledge and/or consent, and their conduct did not benefit NGK, it follows logically that any "advertisement"

"criminal acts," as used in criminal acts exclusion, means conduct for which an insured was or could be convicted and punished under applicable criminal law); *Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. (Mich.) 2003).

> **b)** **The 2002-03 American Home Policy Excludes Coverage for Injury Arising out of Trademark Infringement**

The claims in the underlying lawsuit are, as NGK seems to concede, explicitly barred from coverage under the 2002-03 American Home Policy. Per exclusion (i) under Coverage B, that policy bars coverage for "personal and advertising injury" arising out of the infringement of trademark.[20] Even if the underlying lawsuit were construed to allege "personal and advertising injury," it does not implicate coverage under the 2002-03 American Home Policy.[21]

> **C.** **Cleveland's Negligence Allegation Does Not Require American Home to Defend Because Negligence Does Not Potentially Implicate Coverage Where No Covered Injury is Alleged**

NGK's argument that, by itself, the allegation of negligent supervision in the underlying lawsuit requires American Home to defend, is simply wrong. Cleveland's "negligent supervision/respondeat superior" cause of action merely reflects an additional attempt to obtain recovery for damages caused by alleged trademark infringement. Whether there is coverage for the underlying lawsuit hinges upon whether the underlying lawsuit seeks damages because of

---

alleged by Cleveland could not have been NGK's "advertisement" or concerned NGK's goods or products, as required to implicate coverage under the American Home Policies. Under either scenario, there is no coverage for NGK with respect to the underlying lawsuit.

[20] Courts have enforced similar exclusions to bar coverage for similar claims. *See, e.g., Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332 (6th Cir. (Mich.) 1994); *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F. 3d 215 (4th Cir. (Va.) 2003).

[21] As discussed in Section III.B.1.a.(1), however, the presence of this exclusion in no way diminishes the fact that, under the applicable policy language and law, none of the American Home Policies provides coverage for trademark infringement claims or, more particularly, for the claims by Cleveland against NGK.

"personal and advertising injury" as defined in the American Home Policies. The underlying lawsuit does not seek damages for "personal and advertising injury." The mere allegation of negligence does not indicate that NGK committed one or more of the "personal and advertising injury" offenses, as required. Furthermore, accepting NGK's argument would lead to absurd and unintended results. In essence, NGK's position is that, regardless of the nature of the allegations, or damages at issue, every lawsuit alleging negligence of any kind is potentially covered. This argument must be rejected, as it would render the majority of policy provisions, including the insuring agreements and definitions, meaningless and irrelevant.

The cases cited by NGK do not support its position. For example, *Allstate Ins. Co. v. Gravine*, 1988 WL 192414 (Pa. Com. Pl. December 15, 1988), concerns coverage for bodily injuries caused by an auto accident. The sole question for the *Gravine* court was whether an automobile exclusion barred coverage for the parents of the driver at fault, who were alleged to have negligently supervised their child. Neither *Gravine* nor the other decisions cited by NGK in this regard are relevant to coverage for the underlying trademark infringement suit.[22]

### D.  The November 26, 2002 Claim Handler's Activity Note is Irrelevant

NGK repeatedly mentions a claim-file activity note by Graham Wiggins. This claim note has no bearing on the duty to defend. Under Tennessee law, the duty to defend presents a question of contractual interpretation, which is for the court to determine as a matter of law. *See, e.g., Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000). The opinion of an

---

[22] *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363 (Pa. 1987), holds only that a claim against the defendants for bodily injuries, allegedly caused by their failure to properly supervise their three-year-old child, potentially implicated coverage under their homeowner's liability policy. *Vanguard Ins. Co. v. McKinney*, 459 N.W.2d 316 (Mich. App. Ct. 1990), holds merely that coverage for a negligent entrustment claim against an insured father was not barred by an exclusion for injury that is expected or intended by "the insured." Neither decision has any bearing on this matter, which involves whether Cleveland sustained alleged "personal advertising injury."

American Home employee is completely irrelevant to the Court's determination of American Home's duty to defend and is thus inadmissible evidence. *See, e.g., Chatton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 10 Cal.App.4[th] 846, 13 Cal.Rptr.2d 318 (Cal. App. 1 Dist. 1992) (because duty to defend is legal issue for the court, opinion evidence regarding interpretation of policy is completely irrelevant; thus, claim handlers' admission of liability is inadmissible).

Furthermore, NGK fails to recognize that the note, which is dated November 26, 2002, was written before the underlying lawsuit was filed, on August 19, 2003. As set forth above, it is well established that the duty to defend is based on allegations set forth within a complaint. It is axiomatic that, prior to filing of suit, the insurer does not know the precise allegations that will be asserted and, therefore, cannot determine or predict its duty to defend. Without a suit setting forth the allegations against the insured, there is nothing against which to measure whether a duty to defend exists. Moreover, a defense obligation is not triggered until a lawsuit is filed. The claim note is thus irrelevant and inadmissible.

**E.     The Issue of American Home's Duty to Indemnify, if any, is Premature**

NGK's request for a Court order requiring American Home to indemnify NGK for any liability it incurs is premature. Because the underlying lawsuit fails to assert any claims that may be covered under the American Home Policies, no duty to indemnify can arise. Even if the Court determines that a duty to defend exists, however, American Home's duty to indemnify should not be addressed at this time.

The duty to indemnify is separate and distinct from, and narrower than, the duty to defend. *Drexel Chemical Co. v. Bituminous Ins. Co.*, *supra* at 480. That duty concerns an insurer's obligation to pay damages that are imposed upon an insured and is dependent upon the nature of the damages incurred by the insured. *Policeman's Ben. Assn. of Nashville v. Nautilus Ins. Co.*, 2002 WL 126311, *8 (Tenn. Ct. App. Feb. 1, 2002). Indeed, the American Home

Policies' insuring agreement provides that American Home is required to pay only "those sums that the Insured becomes legally obligated to pay as damages" to which those policies apply.

Until NGK becomes legally obligated to pay damages to Cleveland, therefore, American Home's duty to indemnify NGK for such damages cannot be determined. For example, until damages are imposed, numerous coverage issues cannot be decided, including when the relevant damages or offense occurred and whether particular exclusions apply, because determination of those issues hinges on the facts, which are developed through discovery and investigation in the underlying lawsuit. Thus, any declaration of an insurer's duty to indemnify is premature unless there has been a resolution of the underlying lawsuit. *Id.*

## IV.    CONCLUSION

For the foregoing reasons, American Home Assurance Company requests that this Honorable Court enter an order denying NGK Metals Corporation's Motion for Summary Judgment in its entirety, granting American Home's Cross-Motion for Summary Judgment and stating that American Home has no duties or obligations whatsoever to NGK, including to defend or indemnify, under the American Home Assurance Company Policies referenced herein with respect to the underlying lawsuit and/or the claims set forth therein, and denying any request by NGK for the costs of defending the underlying lawsuit or for any costs, expenses or fees NGK has incurred in prosecuting the instant declaratory judgment action.

Respectfully submitted,

s/H. Frederick Humbracht, Jr.

_____
H. Frederick Humbracht, Jr.
Boult, Cummings, Conners & Berry
1600 Division Street, Suite 700
Nashville, TN  37203
Tel:    (615) 252-2371
Fax:    (615) 252-6371

<u>Of Counsel</u>
Richard H. Nicolaides, Jr.
Jonathan T. Viner
Bates & Carey LLP
191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
Tel:    (312) 762-3100
Fax:    (312) 762-3200

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2005, a copy of the foregoing Answer was filed electronically.   Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   All other parties will be served by regular U. S. Mail.   Parties may access this filing through the Court's electronic filing system.

**BOULT, CUMMINGS, CONNERS & BERRY, P.L.C.**

s/H. Frederick Humbracht, Jr.

_____

By:  H. Frederick Humbracht, Jr.

::ODMA\PCDOCS\DOCS\1020698\1v1