**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

**FILED**

2005 FEB 10 ⊓ �: 25

U.S. DISTRICT COURT
EASTERN DIST. TENN.
BY_____ DEPT. CLERK

|  |  |
|---|---|
| NGK METALS CORPORATION | : CIVIL ACTION |
| Plaintiff | : |
| v. | : NO. 1:04-CV-0056 |
| NATIONAL UNION FIRE INSURANCE CO. | : (Judge R. Allan Edgar) |
| OF PITTSBURGH, PA | : |
| and | : |
| AMERICAN HOME ASSURANCE COMPANY | : |
| Defendants | : |
|  | : |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AGAINST DEFENDANT AMERICAN HOME ASSURANCE COMPANY AND
## IN OPPOSITION TO DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT

**URELLO & ASSOCIATES**
Carlyle Urello (BPR # 15704)
6130 Lonas Drive
Knoxville, Tennessee 37909
tel. no. (865) 777-1711; fax no. (865) 777-1730
email: urello@tds.net
LOCAL COUNSEL for Plaintiff
NGK Metals Corporation

**KAUFMAN, COREN & RESS, P.C.**
Douglas Evan Ress, Esq.
1525 Locust Street, 17th Floor
Philadelphia, PA 19102
tel. no. (215) 735-8700; fax no. (215) 735-5170
email: dress@kcr-law.com
Attorneys for Plaintiff
NGK Metals Corporation
(Admitted Pro Hac Vice)

# TABLE OF CONTENTS

Page

Table of Contents ................................................................ i

Table of Authorities ............................................................. ii

I. INTRODUCTION ............................................................. 1

II. REPLY ARGUMENT ........................................................ 3

    A.    Pennsylvania Law Applies Under Both Statutory
           Choice-of-Law Principles and Common Law ............................ 3

    B.    The Criminal Exclusion In The 1999 Policy Year Has An
           Exception To It Which Went Ignored by American Home .................. 6

    C.    The Purported Exclusion for Trademark Claims Does Not Apply ............ 9

    D.    The Standards to Be Applied in this Court's Consideration
           of the Complaint in the Underlying Action ........................... 11

    E.    Pennsylvania Law on Trademarks Makes American Home
           Duty-bound to Defend NGK in the Underlying Action ................... 13

III. CONCLUSION .............................................................. 17

Certificate of Service ........................................................... 19

# TABLE OF AUTHORITIES

Cases

Advance Watch Co. v. Kemper National Ins. Co., 99 F.3d 795 (6th Cir. 1996) . . . . . . . . . . 2,6,15

American Modern Home Insurance Co. v. Daniel, 2003 WL 21920939 (E.D. Tenn.) . . . . . . . . . 6

Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992) . . . . . . . . 10,12

Burns v. Aetna Casualty & Surety Co., 741 S.W.2d 318 (TN. 1987) . . . . . . . . . . . . . . . . . . . . 3,4

CAT Internet Services, Inc. v. Providence Washington Ins. Co.,
333 F.3d 138 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6,14,15

Diversified Investments Corp. v. Regent Insurance Co.,
226 Wis.2d 563, 596 N.W.2d 502 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ekco Group, Inc. v. Travelers Indemnity Co. of Illinois, 273 F.3d 409 (1st Cir. 2001) . . . . . . . . 10

Frog, Switch & Manufacturing Co. v. Travelers Insurance Co.,
193 F.3d 742 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15

Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320 (Pa. 1963) . . . . . . . . . . . . . . . . . . . 7,11

John Deere Insurance Co. v. Shamrock Industries, Inc.,
696 F. Supp. 434 (D. Minn. 1988), aff'd, 929 F.2d 413 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . 16

North American Dealer Co-op v. Interstate Indemnity Co., 2004 WL 2612358 (E.D. Pa.) . . . . . 6

Old Republic Insurance Co. v. Lumbermens Mutual Insurance Co.,
2004 WL 764817 (E.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Parameter Driven Software, Inc. v. Massachusetts Bay Insurance Co.,
25 F.3d 332 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Peerless Lighting Corp. v. American Motorists Insurance Co.,
82 Cal. App. 4th 995, 98 Cal. Rptr. 2d 753 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sholodge, Inc. v. Travelers Indemnity Co. of Illinois, 168 F.3d 256 (6th Cir. 1999) . . . . . . . . . . 15

Sorbee Intl. LTD v. Chubb Customs Ins. Co., 735 A.2d 712 (Pa. Super. Ct. 1999) . . . . . . 7,11,15

Standard Fire Insurance Co. v. Chester-O'Donley & Associates, Inc.,
972 S.W.2d 1 (Tenn. Ct. App. 1998) .................................................. 3,5,7

State Farm Mutual Automobile Insurance Co. v. Dotson, 1995 WL 548784 (Tenn.Ct.App.) ... 3

Superformance International, Inc. v. Hartford Casualty Insurance Co.,
332 F.2d 215 (4th Cir. 2003) ........................................................ 10

Technicon Electronics Corp. v. American Home Assur. Co.,542 N.E.2d 1048 (N.Y. 1989) ... 12

Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co., 829 S.W.2d 270 (Tex. App.1992)

Trinity Universal Insurance Co. v. Turner Funeral Home, Inc.,
2003 WL 23218046 (E.D. Tenn.) ................................................ 3,5-6,12

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 216,
120 S.Ct. 1339, 146 L.Ed2d 182 (2000) ........................................... 10-11

Westfield Co. v. O.K.L. Can Line, 155 Ohio App. 747, 804 N.E.2d 45 (2003) .......... 11,13


Statutes

15 U.S.C. § 1114 ................................................................ 14

T.C.A. § 56-7-102 .............................................................. 3,4

## I. INTRODUCTION

Plaintiff NGK Metals Corporation ("NGK") files this Reply both in support of its Motion for Summary Judgment against Defendant American Home Assurance Company ("American Home"), and in opposition to the untimely filed Counter-Motion for Summary Judgment filed by American Home.[1] This Reply will certainly not re-hash the arguments already made by NGK, and will not take on point-by-point every mistaken assertion by American Home in its 23 page brief. However, NGK has no choice but to point out the more glaring misstatements and errors contained in American Home's papers.

For example, American Home suggests that Tennessee law applies, under both Tennessee statute and common law. On both, nothing could be further from the truth, as demonstrated infra by cases from this Court and elsewhere.

American Home also suggests that there is a criminal exclusion which excludes the coverage sought. Here again, American Home does not provide this Court with an accurate picture, since that exclusion, by Endorsement #5, was deleted in its entirety in 1999, see Exhibit A to Niwa Declaration, at page bates numbered NGK0000380, and was not even raised as a basis for American Home's denial of coverage in its letter of denial.

---

[1] Under this Court's Scheduling Order, agreed to by all counsel at the pretrial conference, all sides were to file their summary judgment motion papers on the same day, with all parties then simultaneously filing a response to the other on a subsequent day. Despite this, American Home chose to ignore this Order and filed nothing on the last day for the filing of summary judgment motions. American Home instead laid in wait, saw NGK's papers without having made any fatal judicial admissions, and then filed a combined Response and Counter-Motion for Summary Judgment. While certainly this Reply by NGK should close all filings on the topic (American Home has indicated informally that it will not be filing anything in response to this Reply), nonetheless, the Court should appreciate the circumstances under which the briefing has occurred.

1

American Home even posits that there is an exclusion in the last policy at issue for trademark claims, but here again, the truth is something different. While other cases and policies have full trademark exclusions, our situation does not, and there is an exception to the trademark exclusion which American Home failed to cite to this Court, or in any way reference, which excepts from the exclusion "infringement, in your 'advertisement', of copyright, trade dress or slogan." See Exhibit D to Niwa Declaration, page bates numbered NGK0000409.

Also missing from American Home's papers is any true appreciation of the standards to be applied in this Court's consideration of the Complaint in the Underlying Action brought by Roger Cleveland Golf ("Cleveland") against NGK. Indeed, from a reading of American Home's papers, one would think we were debating, and strictly construing, the scope of a criminal indictment, instead of a civil action brought against NGK under the liberal notice pleading requirements of the Federal Rules of Civil Procedure.

In simple terms, when the Court gets beyond the various glaring errors advanced by American Home, and focuses on what a District Court in Pennsylvania (and then the Third Circuit) would do with this case under Pennsylvania law, it is clear that the split of authority between the Third Circuit and Sixth Circuit will be dispositive to the outcome.[2] Under applicable Pennsylvania law, there is at least a duty to defend the Underlying Action brought by Cleveland against NGK on the part of American Home.[3]

---

[2] Compare CAT Internet Services, Inc. v. Providence Washington Ins. Co., 333 F.3d 138 (3d Cir. 2003) with Advance Watch Co. v. Kemper National Ins. Co., 99 F.3d 795 (6th Cir. 1996).

[3] American Home has advanced the proposition that even if there is a duty to defend, it is premature to determine whether there is a duty to indemnify. American Home took a different position when it denied coverage, see Exhibit D to Niwa Unsworn Declaration, and contended there that it will not indemnify NGK "for any settlement, verdict or judgment awarded as a result of the

2

## II. REPLY ARGUMENT

### A. Pennsylvania Law Applies Under Both Statutory Choice-of-Law Principles and Common Law

NGK posited in its opening brief that Tennessee choice-of-law principles would look to the law where the insurance policies were issued and delivered. In response, American Home advocated the opposite, namely that Tennessee substantive law applies, incorrectly relying on T.C.A. § 56-7-102, which applies Tennessee law to insurance policies "issued to or for the benefit of any citizen or resident of this state, " as well as on the case of Standard Fire Insurance Co. v. Chester-O'Donley & Associates, Inc., 972 S.W.2d 1 (Tenn. Ct. App. 1998).

First, as to the statute, T.C.A. § 56-7-102 on its face requires an examination of the policy at the point of its issuance and delivery, to determine whether Tennessee law applies. Compare State Farm Mutual Automobile Insurance Co. v. Dotson, 1995 WL 548784 (Tenn.Ct.App.) with Burns v. Aetna Casualty & Surety Co., 741 S.W.2d 318 (TN. 1987).

The Dotson case was one where the insurance policy was contracted for in Tennessee but the accident later occurred in Mississippi - under such circumstance, the Court found that T.C.A. § 56-7-102 did apply. On the flip side, the Burns case was one of a fleet policy written by a carrier in Connecticut and mailed to a broker in Massachusetts and then delivered to the insured corporation in Rhode Island to cover vehicles in 50 states. Even though it involved a fleet policy inclusive of

---

filing of any complaint alleging the same claims as set forth in the draft complaint you provided us." Despite this shift in position on indemnification, if the Court is so inclined, NGK is willing to have this Court hold the indemnification issue in abeyance until the conclusion of the Underlying Action. Having expressed this willingness, however, the Court should know that NGK did not file such demand for indemnification unnecessarily, since there is support for a declaration of the parties' respective rights and obligations with respect to indemnification at this stage of the proceedings. E.g., Trinity Universal Insurance Co. v. Turner Funeral Home, Inc., 2003 WL 23218046 *13, 14 (E.D. Tenn.)(Edgar, C.J.).

3

vehicles in Tennessee, and even though the underlying accident occurred in Tennessee, nonetheless, the Court determined that T.C.A. § 56-7-102 did not apply; i.e., the fleet policy was not something to be considered a Tennessee contract.

As the Court in Burns held, the delivery of the policy of insurance is the act which makes the contract binding and operative between the contracting parties. In this case, the undisputed facts of record are that the policies were issued and delivered to NGK at its then principal place of business in Pennsylvania, and that the policies themselves appropriately contained the requisite Pennsylvania forms and Pennsylvania notices. The fact that NGK may have ceased operations in Pennsylvania and today maintains its principal place of business in Tennessee does not change the fact that at the time the policies were issued and delivered, the parties naturally would have contemplated that Pennsylvania law would apply. It is simply revisionist history for American Home to issue and deliver Pennsylvania policies to a Pennsylvania resident and then argue to this Court years later that "the parties necessarily contemplated that American Home would most likely be called upon to perform its obligations in Tennessee, such as defending a suit filed in a Tennessee court." See American Home Memorandum at p.7. Similarly, it is nothing short of nonsense for American Home to argue that the Pennsylvania endorsements to the policies do not contain any choice-of-law provisions. Such argument simply misses the point that the issuance and delivery of policies in Pennsylvania, with Pennsylvania endorsements, means that the parties contemplated at the time that American Home would most likely be called upon to perform its obligations in Pennsylvania, for the benefit of its then Pennsylvania resident.

American Home's after-the-fact wishful thinking about what the parties contemplated, unsupported by affidavit and nowhere part of the record, is as glaringly incorrect as the suggestions

4

to this Court by American Home that the rule of *lex loci* is outmoded and irrelevant with respect to insurance policies, and that the Court should instead apply the law of the place of performance. So, too, is American Home's reliance on the case of Standard Fire Insurance Co. v. Chester-O'Donley & Associates, Inc., 972 S.W.2d 1 (Tenn. Ct. App. 1998).

As American Home would wish this Court to see it, Chester-O'Donley is some sort of turning point in choice-of-law jurisprudence with respect to insurance policies, seemingly reversing the long-held position that Tennessee Courts should apply the law of the place where the policy was issued and delivered. On this, again, American Home is leading this Court down a path of reversal, a path which this Court knows better than to take. Despite American Home's spin, Chester-O'Donley is a case where the Court stated that Tennessee Courts apply the substantive law of the state in which the policy was issued and delivered. In footnote one, the Court even acknowledged that the "most significant relationship" approach has not been adopted in Tennessee with respect to contract disputes, but, in any event, even if it should be, under the facts of that case, the result would be the same because the most significant contacts were in Kentucky, which happened also to be the state where the insurance policy was issued and delivered. Id. at *5.

In at least two cases after Chester-O'Donley, this very Court, by Chief Judge Edgar, recognized that in the absence of a choice-of-law provision in an insurance policy, Tennessee law requires the application of the substantive law of the place where the insurance policy was issued and delivered to the insured. Trinity Universal Insurance Co. v. Turner Funeral Home, Inc., 2003 WL

5

23218046 (E.D. Tenn.)(Edgar, C.J.); American Modern Home Insurance Co. v. Daniel, 2003 WL 21920939 (E.D. Tenn.)(Edgar, C.J.).[4]

The significance of the foregoing is rather obvious. Pennsylvania substantive law applies because Pennsylvania (where NGK was previously headquartered) is the place where all the insurance policies were issued and delivered to NGK.[5]

## B.  The Criminal Exclusion In The 1999 Policy Year Has An Exception To It Which Went Ignored by American Home

American Home claims that even if there is coverage in the insuring section of the policy, there is still no duty to defend because of the criminal exclusion, which American Home claims is contained in the 1999-00, 2000-01 and 2001-02 policy years, and which American Home cites as:

(4)   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of any insured.

See American Home Memorandum at p.5.

What American Home completely fails to point out to this Court, however, is that this particular exclusion, by Endorsement #5, was deleted in its entirety in 1999. See Exhibit A to Niwa Declaration, at page bates numbered NGK0000380.

---

[4] Pennsylvania, too, would apply the substantive law of the place where the insurance policy was issued and delivered to the insured. E.g., Old Republic Insurance Co. v. Lumbermens Mutual Insurance Co., 2004 WL 764817 (E.D. Pa.); North American Dealer Co-op v. Interstate Indemnity Co., 2004 WL 2612358 (E.D. Pa.).

[5] For reasons more fully addressed infra, NGK disagrees with American Home's contention that the choice of law issue is not dispositive. There is a significant split of authority between the Third and Sixth Circuits on critical trademark/advertising issues, which NGK believes is dispositive in its favor, under the application of Pennsylvania law as set forth in CAT Internet Services, Inc. v. Providence Washington Ins. Co., 333 F.3d 138 (3d Cir. 2003), as compared to the oft-criticized case of Advance Watch Co. v. Kemper National Ins. Co., 99 F.3d 795 (6th Cir. 1996).

6

In any event, as the Court recognized in Chester-O'Donley, and is fairly universally recognized, "[a]n insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made. (citations to 7th Cir., Kentucky and Tennessee cases omitted)" *11; Sorbee Intl. LTD v. Chubb Customs Ins. Co., 735 A.2d 712, 714 (Pa. Super. Ct. 1999)(*citing* Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320 (Pa. 1963))(duty to defend where allegations of complaint are potentially within scope of insurance policy).

Stated another way, even if the policies all contained criminal exclusions, American Home should have defended under a reservation of rights in the event it would be factually determined in the Underlying Action that a criminal act was committed by or at the direction of NGK (which will not be the case). The mere fact that some sort of allegation is made in the Underlying Action which American Home could argue will ultimately show that a criminal act was committed by or at the direction of NGK is of no moment, since it is just as possible that after conclusion of the Underlying Action, the opposite will be the case.

Moreover, American Home's sole evidentiary support for this Court to deny a defense to NGK based on the criminal act exclusion is an email from the guilty party himself (or rather, from one of them) to Cleveland which cannot be considered as an admission by NGK, having been made at the time by someone who was no longer in NGK's employ.[6] Regardless, that email attached to the Humbracht Declaration simply says that the writer was told to put away 1000 of the Sandwedges so they might be given as gifts to customers, acquaintances, etc., but does not make clear who told

---

[6] The email attached to the Humbracht Declaration states, "I am a former employee of NGK Metals Corp...."

7

that to the writer - it very well could have been the other guilty person, and certainly was not the President of NGK.

As if the above were not enough, it bears mentioning that American Home certainly knew at the time it wrote its letter of denial in the face of receipt of the draft complaint, which letter of denial is attached to the Niwa Declaration as Exhibit F, that there was no criminal act exclusion. In that letter of denial, geared primarily to the 1999-00 policy year, there is no claim by American Home that its denial was based in any way on the criminal act exclusion. See page bates numbered NGK0000696. What this means is both that American Home knew full well that such defense did not exist because the criminal act exclusion had been deleted in its entirety by Endorsement # 5, and that American Home has waived such defense.

Even the other exclusion raised in the letter of denial under Sec. B.2.a.(1) is not a basis for denial of the duty to defend. It simply cannot be said at this stage of the proceedings, based upon the summary judgment record before this Court, as an absolute and binding finding, before the trial in the Underlying Action, that the advertising injury in this case was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury...'".

Thus, whether or not there is a criminal act exclusion does not change the result that American Home has a duty to defend. Having chosen not to defend on other grounds, American Home cannot now have this Court judicially determine that Cleveland's injury arose out of a criminal act committed by or at the direction of NGK.

8

## C. **The Purported Exclusion for Trademark Claims Does Not Apply**

Rather cutely, American Home contends that there is an exclusion from coverage in the 2002-2003 Policy for:

> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

> \* \* \*

See American Home Memorandum at p.6. What American Home fails to advise the Court, however, is that the three stars it uses in its quote took the place of critical language about which this Court should have been advised. See Exhibit B to Niwa Declaration, at page bates numbered NGK0000306. Specifically, the policy provides that the exclusion does not apply "to infringement, in your 'advertisement', of copyright, trade dress or slogan." Id.[7]

For purposes of American Home's duty to defend, there are three points to be made here.

First, the fact that a later policy added an exclusion for trademarks, albeit a limited one, means that all the policies include coverage for advertising injury, including from the use of another's advertising idea in your advertisement. However, from that universe or set of coverage, the sub-set of trademark claims, or at least certain trademark claims, are then carved out as

---

[7] While there appears to be a factual dispute between the parties as to whether the trademark exclusion is contained in the last of the four policies only, or whether it is part of the last three policies, but not in the first, this is not a material factual dispute. All parties agree that the 1999-2000 policy does not contain any trademark exclusion, and all parties agree that at least one of the later policies was changed to add the trademark exclusion, albeit with the exception to the exclusion pointed out here.

9

exclusions in at least one of the later years. This demonstrates that all trademark claims were covered claims in at least the first policy period, until they were later carved out.[8]

Second, the Court should not be persuaded by the cases cited by American Home for the proposition that a trademark exclusion would exclude coverage. After all, not all the policies here had the trademark exclusion, and in any event, those cases cited by American Home dealt with absolute trademark exclusions instead of ones which had broad exceptions to the exclusion, as we have here.[9]

Third, the exception to the exclusion for trade dress means that Cleveland's claims are claims as to which American Home has a duty to defend. After all, the design of the clubs themselves could constitute trade dress, at least if they had acquired secondary meaning (about which Cleveland should be free to put in evidence at the trial of the Underlying Action). See generally Wal-Mart

---

[8] American Home refers this Court to the case of Ekco Group, Inc. v. Travelers Indemnity Co. of Illinois, 273 F.3d 409 (1st Cir. 2001)(applying New Hampshire law) for the proposition that a later language change is not evidence of what the first policy language meant, but is simply a precaution against recurrent misunderstanding. In that case, however, the Court was addressing a later draft by an insurer organization without any evidence whatsoever that the particular insurer before it had adopted that change. In any event, even if one were to agree that the later language here was simply made as a precaution against recurrent misunderstanding, such change would be nothing short of an admission that the first set of policy language was not clear and unambiguous, and was subject to differing interpretations - meaning that it must get construed against the insurer. After all, any doubt as to whether the claim falls within the coverage must be resolved in favor of NGK. Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992).

[9] In the case of Superformance International, Inc. v. Hartford Casualty Insurance Co., 332 F.2d 215 (4th Cir. 2003)(Va. law), there was an express exclusion, but no mention of the exclusion being anything other than absolute, rather than one with broad exceptions to it. In any event, what this case means is that in the absence of an express exclusion, an advertising injury claim encompasses the type of case asserted by Cleveland, warranting a defense from American Home. Similarly, the case of Parameter Driven Software, Inc. v. Massachusetts Bay Insurance Co., 25 F.3d 332 (6th Cir. 1994)(Mich. law) involved a policy with a full exclusion of advertising offenses "arising out of ...infringement of trademark."

10

Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 216, 120 S.Ct. 1339, 146 L.Ed2d 182 (2000)(product design can be protected as unregistered trade dress if it acquires secondary meaning); see also Westfield Co. v. O.K.L. Can Line, 155 Ohio App. 747, 804 N.E.2d 45 (2003).[10]

For the above reasons, the purported exclusion for trademark claims does not apply, and does not serve as any basis for denying NGK a defense in the Underlying Action. If anything, the purported exclusion in later years makes clear that the general coverage section includes the coverage here sought. If anything, cases relying on an absolute trademark exclusion also mean that the coverage sections include such advertising injuries, only to then be expressly carved out from coverage.

## D. The Standards to Be Applied in this Court's Consideration of the Complaint in the Underlying Action

From a reading of American Home's Memorandum, one would think that the Cleveland Complaint is to be fly-specked with the same intensity as if it were a criminal indictment - but this is not the standard under which it is to be reviewed. Rather, under Pennsylvania law, an insurer has a duty to defend its insured "whenever the allegations of the complaint filed against the insured comprehend an injury that is actually or *potentially* within the scope of the insurance policy" (emphasis added). Sorbee Intl. LTD v. Chubb Customs Ins. Co., 735 A.2d 712, 714 (Pa. Super. Ct. 1999) (*citing* Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320 (Pa. 1963); *see also*

---

[10] In the Westfield case, the Court held that the insurer had a duty to defend under an advertising injury clause even though the underlying complaint did not use the word "advertising", but instead claimed that the insured "sold and marketed" another's product – language similar to the "sale or distribution" language used in the Cleveland Complaint in this matter. As the Westfield Court acknowledged, the phrase "arising out of" (as in that the injury has to arise out of the infringement) is to be liberally construed so as to not make the coverage with respect to trade dress illusory.

11

Technicon Electronics Corp. v. American Home Assur. Co.,542 N.E.2d 1048, 1050 (N.Y. 1989) ("If the complaint contains *any facts or allegations* which bring the claim even potentially within the protection purchased, the insurer is obligated to defend") (emphasis added). "Potential' coverage exists whenever the allegations in the underlying [action] allow for the introduction of evidence on a theory of recovery within the scope of the policy." Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co., 829 S.W.2d 270, 271 (Tex. App.1992).

To determine whether a complaint *contemplates* an injury that is *potentially* within the scope of the policy; i.e. triggering a carrier's duty to defend, the factual allegations of the complaint against the insured must be deemed true and be liberally construed "with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992).[11]

In this situation, where this Court sits in judgment here, as well as serving as the trial Court in the Underlying Action, the question the Court should ask itself is what it will do if Cleveland comes forward with evidence in the Underlying Action which beyond doubt constitutes advertising, or which otherwise indisputably would demonstrate NGK's entitlement to a defense from American Home. Will the Court deny Cleveland the right to introduce such evidence, as somehow being beyond the scope of the Complaint, despite that the Federal Rules of Civil Procedure require only notice pleading? One would think not, and therefore, American Home should provide NGK with a defense, even if any right to indemnity awaits the outcome of the Underlying Action.

_____

[11] Not surprisingly, this was the same view espoused by this Court under Tennessee law in Trinity Universal Insurance Co. v. Turner Funeral Home, Inc., 2003 WL 23218046 (E.D. Tenn.)(Edgar, C.J.)("Finally, if the allegations in a complaint are ambiguous and some doubt exists as to whether the allegations state a cause of action which the insurer has a duty to defend under the policy, such 'doubt should be resolved in favor of the insured. (citation omitted)'" p.*4.)

12

After all, Cleveland would certainly be heard to argue that it brought a Lanham Act case against NGK, and the essence of a Lanham Act claim is advertising, even if Cleveland did not use that word in its Complaint against NGK, but instead accused NGK of violating its trademarks "either through sale or distribution." See Cleveland Complaint, at § 39, attached as Exhibit E to Niwa Declaration; see also Westfield Co. v. O.K.L. Can Line, 155 Ohio App. 747, 804 N.E.2d 45 (2003)(duty to defend where Complaint in Underlying Action there accused insured of having "sold and marketed", as opposed to having advertised).

It certainly bears mention that the policies themselves define "advertisement" as being something less than notice to the general public, but instead as including notice to *"specific market segments* about [the insured's] goods, products or services for the purpose of attracting customers or supporters" (emphasis added). Is there any set of facts which Cleveland would be permitted to introduce into evidence to demonstrate that NGK did, by giving away clubs to a specific market segment, namely its customers, violate Cleveland's trademarks? The answer is in the affirmative, as is the answer to the question about whether American Home has a duty to defend.

That is, consideration of the standards to be applied in reviewing Cleveland's Complaint, and in determining what evidence could be admitted in the face of such Complaint, leads to the inevitable conclusion that American Home has a duty to defend.

## E.     Pennsylvania Law on Trademarks Makes American Home Duty-bound to Defend NGK in the Underlying Action

American Home contends that there is no reading of Cleveland's Complaint in the Underlying Action to conclude that there has been an advertising injury, or that any injury to

13

Cleveland arose from the advertising. American Home is incorrect, at least under applicable Pennsylvania and Third Circuit law.

For example, Cleveland contends in its Complaint that NGK made unauthorized golf clubs which purported to be Cleveland golf clubs, with Cleveland's Trademarks imprinted on them. As Cleveland has alleged, the Cleveland Trademarks have a distinctive design to them with a high degree of recognition in channels of trade and commerce. According to the Cleveland Complaint, these golf clubs were offered for sale through use of an email to Cleveland, were used for NGK's benefit either though sale or distribution, and were purportedly given to NGK's customers for the purpose of attracting business. Cleveland also alleges that NGK violated Title 15, U.S.C., § 1114, which by its terms encompasses the infringement of trademarks in connection with "the advertisement of any good or service."

Under applicable Pennsylvania and Third Circuit law, these allegations are enough to require that American Home provide a defense to NGK. After all, the Third Circuit Court of Appeals has held that a trademark, in and of itself, may be considered a species of "advertising" because "it is a way of marking goods so that they will be identified with a particular source." Frog, Switch & Manufacturing Co. v. Travelers Insurance Co., 193 F.3d 742, 749 (3d Cir. 1999).

And, as previously pointed out in NGK's Opening Memorandum, in CAT Internet Services, 333 F.3d 138 (3d Cir. 2003), the Third Circuit Court of Appeals held that "when a complaint alleges that an insured misappropriates and uses trademarks...for the purpose of gaining customers," as alleged in Cleveland Golf's Complaint, "the conduct constitutes 'misappropriation of an advertising idea...under Pennsylvania law." Id. at 142. The Court there also noted that a recent Pennsylvania Superior Court case emphasized that "[i]t makes sense that a trademark infringement action would

14

be covered by an insurance policy that applied to 'misappropriation of advertising ideas' because a trademark...is an advertising idea that may be created and 'owned' and thus wrongfully taken or 'stolen.'" Id. at 143 (*quoting* Sorbee International Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 716 (Pa. Super. Ct. 1999).[12]

For obvious reasons, American Home cites this Court to the case of Advance Watch Co. v. Kemper National Ins. Co., 99 F.3d 795 (6th Cir. 1996), and cases relying on Advance Watch, such as Sholodge, Inc. v. Travelers Indemnity Co. of Illinois, 168 F.3d 256 (6th Cir. 1999), and Diversified Investments Corp. v. Regent Insurance Co., 226 Wis.2d 563, 596 N.W.2d 502 (1999), which reject the notion that the theft of a trademark is the theft of an advertising idea.[13]

These cases, however, do not change the result here since Advance Watch is not the law in Pennsylvania or the Third Circuit, and has been criticized and rejected in the Third Circuit. CAT Internet Services, Inc., 333 F.3d at 142, citing Frog, Switch, 193 F.3d at 747. In this material respect, the choice-of-law determination to be made by the Court in this case is critical.

American Home also cites this Court to at least one case, Peerless Lighting Corp. v. American Motorists Insurance Co., 82 Cal. App. 4th 995, 98 Cal. Rptr. 2d 753 (2000), suggesting that one-on-one solicitation does not constitute advertising, so that the things complained about by Cleveland cannot be advertising injury. While it is correct that the Peerless Court rejected one-on-

---

[12] Ironically, the CAT Internet Services case involved application of Pennsylvania law to find an insurer's duty to defend an underlying action pending in Tennessee.

[13] At least in the Diversified Investments case, the carrier defended under a reservation of rights, and then litigated its obligation to pay the settlement in the Underlying Action. Although the Court relied upon Advance Watch and rejected the insured's position about whether there was a causal connection between the advertising and the injury claimed, the Court there did acknowledge the breadth of "advertising" when it wrote: "Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential consumers."

15

one solicitation as being advertising under California law, at least one Federal Court has held to the contrary. John Deere Insurance Co. v. Shamrock Industries, Inc., 696 F. Supp. 434 (D. Minn. 1988), aff'd, 929 F.2d 413 (8th Cir. 1991). Specifically, in the John Deere case, an insured's three letters to a single customer soliciting that customer's purchase, together with demonstrations of the product for that specific customer, were held to constitute "advertising activity" within the meaning of Commercial General Liability Policy there. As the Federal District Court wrote there:

> If these letters stating the beneficial features of the machine were sent to 100 potential customers, instead of one, [the insurer] would have no argument that they were not advertising activity. While activity directed at one customer seems to stretch the meaning of advertising, Black's Law Dictionary's definition of 'advertise' encompasses any form of solicitation, presumably including solicitation of one person. If [the insurer] had wanted to limit covered advertising activity to 'wide dissemination of materials', [the insurer] could have so provided in its policy. Therefore, the Court finds that there is more than one reasonable interpretation of the meaning of 'advertising activity', and therefore the policy is ambiguous and must be construed against the insurer.

696 F. Supp. at 440. In our case, as mentioned previously, advertising is not only notice to the general public, but also encompasses notice to specific market segments – such as potential purchasers of clubs, such as Cleveland itself, and such as NGK's customers. Had American Home wanted advertising to be limited to only notice to the full general public, it could have so provided in the policies, but it did not.

Here, the ultimate question, to be resolved in the affirmative, is whether the Cleveland Complaint, filed under notice pleading rules, which addresses the use of an email, sale or distribution of thousands of clubs, and promotional give-aways of a product using Cleveland's distinctive design to a targeted segment of the market, and which specifically alleges a Lanham Act violation, in any

16

way potentially implicates a personal and advertising injury claim under the policies at issue. If the answer is anything other than a resounding and definitive no, then a duty to defend attaches.

What the above means is that Cleveland's Complaint in the Underlying Action most certainly encompasses advertising injury claims which entitle NGK to a defense from American Home. This is true both under the liberal reading of Cleveland's Complaint as is properly warranted under the Federal Rules of Civil Procedure, as well as under the law on advertising injury in Pennsylvania and the Third Circuit. Under the applicable choice-of-law in this case (Pennsylvania), the Advance Watch case and those that follow it should be of no moment in this Court's decision as to whether NGK is entitled to a defense from American Home, which it is.

## III. CONCLUSION

For all the foregoing reasons, NGK respectfully submits that it is entitled to summary judgment in its favor and against American Home, declaring at a minimum that American Home provide NGK with a defense in the Underlying Action brought by Cleveland, as well as to be responsible for NGK's attorneys' fees and costs incurred in both the Underlying Action and in this action.

Respectfully submitted,

**URELLO & ASSOCIATES**
Carlyle Urello (BPR # 15704)
6130 Lonas Drive
Knoxville, Tennessee 37909
tel. no. (865) 777-1711; fax no. (865) 777-1730
email: urello@tds.net
LOCAL COUNSEL for Plaintiff
NGK Metals Corporation

17

**KAUFMAN, COREN & RESS, P.C.**

BY: Douglas Evan Ress, Esq.
1525 Locust Street, 17th Floor
Philadelphia, PA 19102
tel. no. (215) 735-8700; fax no. (215) 735-5170
email: dress@kcr-law.com
Attorneys for Plaintiff
NGK Metals Corporation
(Admitted Pro Hac Vice)

18

**FILED**

| | |
|---|---|
| NGK METALS CORPORATION | : |
| Plaintiff | : |
| v. | : |
| NATIONAL UNION FIRE INSURANCE CO. | : |
| OF PITTSBURGH, PA | : |
| and | : |
| AMERICAN HOME ASSURANCE COMPANY | : |
| Defendants | : |
| | : |

CIVIL ACTION **2005 FEB 10 ⊃ 9: 25**

NO. 1:04-CV-0056  U.S. DISTRICT COURT
EASTERN DIST. TENN.
(Judge R. Allan Edgar)

BY_____ DEPT. CLERK

## **CERTIFICATE OF SERVICE**

I, Douglas Evan Ress, being admitted on a pro hac vice basis to this Court in the above-captioned action, hereby certify that true and correct copies of the foregoing:

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT AMERICAN HOME ASSURANCE COMPANY AND IN OPPOSITION TO DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT**

were served by federal express, next day delivery, on the below-noted date, on the following:

H. Frederick Humbracht, Jr., Esq.
Boult, Cummings, Conners & Berry, PLC
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, TN 37203
attorneys for Defendant American Home
Assurance Company

Carlyle Urello, Esq.
Urello & Associates
6130 Lonas Drive
Knoxville, TN 37909
LOCAL COUNSEL for Plaintiff
NGK Metals Corporation

Richard H. Nicolaides, Jr., Esq.
Bates & Carey LLP
191 North Wacker Drive, Suite 2400
Chicago, IL 60606
attorneys for Defendant American
Home Assurance Company

Douglas Evan Ress

DATE: February 9, 2005

19