NGK METALS CORPORATION,       )
                                )
         *Plaintiff,*        )
v.                            )        No. 1:04-cv-56
                                )        *Edgar*
NATIONAL UNION FIRE INSURANCE  )
CO. OF PITTSBURGH, PA, and AMERICAN )
HOME ASSURANCE COMPANY,     )
                                )
       *Defendants.*      )

## MEMORANDUM

NGK Metals ("NGK"), a metal alloy corporation, filed this action against National Union Fire Insurance ("National Union") and American Home Assurance ("American Home") (collectively "Defendants") alleging claims for breach of contract and statutory bad faith and seeking a declaratory judgment of its rights under certain insurance policies issued by the Defendants. [Court File No. 1]. Both Defendants filed counterclaims against NGK for statutory bad faith. [Court File Nos. 14, 15]. The parties reached an agreement dismissing with prejudice certain of these claims: NGK dismissed with prejudice all of its claims against National Union and the statutory bad faith claim against American Home; both Defendants dismissed with prejudice their respective statutory bad faith claims against NGK. [Court File No. 31]. Consequently, only NGK's breach of contract and declaratory relief claims against American Home are currently pending before the Court. [Court File No. 31].

Briefly, both claims are based on American Home's failure to defend and indemnify NGK in a separate action, *Roger Clevland Golf Co., Inc. v. NGK Metals Corp.*, No. 1:03-cv-287 (the

"underlying action"), currently before this Court. NGK claims American Home has a right and duty to defend NGK in the underlying action and indemnify NGK for any resulting damages pursuant to four successive commercial general liability policies issued to NGK by American Home. [Court File No. 1]. NGK moves for summary judgment. [Court File No. 25]. In responding, American Home also moves for summary judgment.[1] [Court File No. 35]. NGK replied to American Home's motion. [Court File No. 36]. American Home moved for leave to file a response to NGK's reply. [Court File No. 37]. Despite NGK's objection to American Home's motion for leave [Court File No. 41], the Court will **GRANT** that motion and consider American Home's response [Court File No. 38]. American Home also moved for oral argument on the pending cross-motions for summary judgment. [Court File No. 40]. The Court heard oral argument on April 25, 2005.

## I.   <u>Discretionary Jurisdiction of Declaratory Judgment Act</u>

Initially, although neither party addresses the issue, the Court must decide whether to exercise its discretionary jurisdiction over NGK's declaratory judgment claim. For, whether a district court should entertain a declaratory judgment action is a matter within the sound discretion of the district court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-90 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). And whether a district court should exercise its jurisdiction over a declaratory judgment action is a threshold issue the Court must decide before addressing the merits of the pending motions.

---

[1] The Court notes NGK's vehement objection to the late filing of American Home's motion for summary judgment. American Home's motion for summary judgment was indeed untimely. However, in an effort to correctly resolve the pending issues, the Court will consider American Home's motion in this case.

*Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991). To guide district courts in making this determination, the Sixth Circuit has enunciated five factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*AmSouth*, 386 F.3d at 785 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

Applying these factors to the instant case, the Court decides to entertain NGK's declaratory judgment claim. Doing so will settle the controversy—whether, pursuant to the insurance contracts, American Home has a duty to defend and indemnify NGK in the underlying action—and will serve a useful purpose in clarifying the legal relations at issue. Indeed, a declaratory judgment action is an appropriate avenue to determine whether an insurer has a duty to defend and indemnify an insured. *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94 (Pa. Super. Ct. 1994). Further, a declaratory remedy is not being used here for procedural fencing or to help NGK win a race for *res judicata* and will not increase the friction between federal and state courts, as the underlying action is pending in this Court, not a state tribunal. Finally, there is no superior or more effective alternative remedy. Accordingly, the Court will exercise its discretionary jurisdiction to entertain NGK's declaratory judgment claim.

Having decided to entertain this action, the Court turns its focus to the pending cross-motions for summary judgment.

-3-

## II.  <u>Standard of Review</u>

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Shah*, 338 F.3d at 566; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, determine the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute.  *Celotex*, 477 U.S. at 322.  A mere scintilla of evidence is not enough.  *Anderson*, 477 U.S. at 252; *Shah*, 338 F.3d at 566; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "Evidence suggesting a mere possibility" of a factual dispute is not enough to preclude summary judgment.  *Shah*, 338 F.3d at 566; *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907.  While the Court draws all reasonable factual inferences in the light most favorable to the non-moving party, it may grant summary judgment if the record taken as a

-4-

whole could not lead a rational, objective jury to find for the non-moving party. *Matsushita*, 475 U.S. at 587; *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files such a motion. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001); *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft*, 929 F.2d at 248. Simply because "both parties make motions for summary judgment . . . does not require the Court to rule that no fact issue exists." *B.F. Goodrich*, 245 F.3d at 592 (quoting *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948)). "Rather, the court must evaluate each party's motion on its own merits taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft*, 929 F.2d at 248.

## III.  Facts

The following facts are undisputed by the parties.  In or about 1996, Cleveland Golf Company ("Cleveland") and NGK entered into a contract, whereby NGK produced beryllium-alloy golf club heads bearing Cleveland's federally-registered trademarks. [Court File No. 1 at ¶ 9].  NGK produced these golf club heads at its plant in Sweetwater, Tennessee.  Cleveland terminated this contract at the end of 1997 or early 1998.  Cleveland instructed NGK to destroy any golf club heads that were produced by NGK but not purchased by Cleveland.  In December 2000 a former NGK employee, David Brady, sent an e-mail to Cleveland, offering for sale a substantial number of Cleveland golf clubs in his possession.  [*Id.* at ¶ 10].

-5-

Based on this e-mail, Cleveland contacted the Tennessee Bureau of Investigation to commence an investigation into NGK's activities. [*Id.* at ¶ 11]. The investigation determined that, following the termination of the contract, NGK employees Brady and John Manikas stole NGK property and continued to produce Cleveland golf club heads and shafted these heads to create finished golf clubs. [*Id.* at ¶¶ 11-13]. Both Brady and Manikas pled guilty to felony theft in Tennessee state court. [*Id.* at ¶¶ 17-18]. Based on these facts, Cleveland filed a civil claim in this Court against NGK, alleging trademark infringement, conversion, and negligent supervision. [*Id.* at ¶¶ 27, 29]. The case is captioned *Roger Clevland Golf Co., Inc. v. NGK Metals Corp.*, No. 1:03-cv-287 ("the underlying action").

NGK requested that its insured, American Home, defend NGK in the underlying action and indemnify NGK for any resulting loss under four successive commercial general liability policies issued to NGK by American Home. [*Id.* at ¶ 34]. The first policy, number 612-25-36, covered January 1, 1999, to January 1, 2000, ("the 1999-00 policy") [Court File No. 26, Decl. of Niwa, Ex. A]; the second policy, number GL 612-25-36, covered January 1, 2000, to January 1, 2001, ("the 2000-01 policy") [*Id.*, Ex. B]; the third policy, number GL 612-25-36 RA, covered January 1, 2001, to January 1, 2002, ("the 2001-02 policy") and was simply an adoption of the previous policy [*Id.*, Ex. C]; the fourth policy, number GL 612-25-36 RA, covered January 1, 2002, to January 1, 2003, ("the 2002-03 policy") [*Id.*, Ex. D]. American Home disclaimed coverage. [Court File No. 1 at ¶ 35]. After various correspondence between the parties, none of which resolved American Home's duties to NGK, NGK filed the instant action. [*Id.* at ¶ 42].


IV.   **Analysis**


-6-

A.    <u>Choice of Law</u>

As this Court's jurisdiction is based on diversity, the Court must first determine which state's substantive law applies. In so determining, this Court "must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *accord NILAC Intern. Mktg. Group v. Ameritech Svs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). As is evident from the parties' vigorous dispute over this issue and as will become obvious from the merits discussion below, which state's substantive law applies is a critical issue, at least regarding American Home's duty to defend.

In insurance coverage disputes, Tennessee courts apply the substantive law of the state in which the insurance policy was issued and delivered if there is no choice of law clause in the policy. *Kustoff v. Stuyvesant Ins. Co.*, 22 S.W.2d 356, 358 (Tenn. 1929); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn.1973), *Kustoff*, 22 S.W.2d at 358, *Hutchison v. Tennessee Farmers Mut. Ins. Co.*, 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983)); *accord Trinity Univ. Ins. Co. v. Turner Funeral Home, Inc.*, No. 1:02-cv-231, 2003 WL 23218046, at *3 (E.D. Tenn. Dec. 12, 2003); *Am. Modern Home Ins. Co. v. Daniel*, No. 1:01-cv-206, 2003 WL 21920939, at *2 (E.D. Tenn. June 30, 2003); *Standard Const. Co. Inc. v. Maryland Cas. Co.*, No. 01-2006V, 2002 WL 1477886, at *5 (W.D. Tenn. May 15, 2002); *Topmost Chem. and Paper Corp. v. Nationwide Ins. Co.*, No. 01-2588V, 2002 WL 1477880, at *3 (W.D. Tenn. Apr. 23, 2002). This rule embodies the traditional *lex loci contractus* choice-of-law theory. *See Standard Fire*, 972 S.W.2d at 5 n.1.

-7-

In the instant case, neither NGK nor American Home point to any choice of law provision in the insurance policy, and the Court finds none. Consequently, the Court must apply Tennessee's choice of law rules to determine which state's substantive law governs. And in so doing, the Court finds that Pennsylvania law controls the instant dispute. Without a doubt, American Home issued the initial insurance policy, the 1999-00 policy, to NGK in Pennsylvania and delivered the policy to NGK's address in Reading, Pennsylvania. [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000346]. Similarly, American Home issued the three subsequent policies, governing the three successive years, to NGK in Pennsylvania and delivered each policy to NGK's address in Reading, Pennsylvania. [*Id.*, Ex. B at NGK0000287, Ex. C at NGK0000389, Ex. D at NGK000399]. According to Tennessee's choice-of-law rule, Pennsylvania law applies to the instant dispute because the insurance policies were issued and delivered in Pennsylvania.

American Home does not contest that the initial policy and the three following policies were issued and delivered in Pennsylvania. Instead, in arguing that Pennsylvania law does not control, American Home contends that the above-stated choice-of-law rule is not the applicable rule in this case. American Home argues that the applicable rule is found in Tenn. Code Ann. § 56-7-102. Section 56-7-102 provides, in pertinent part:

> Every policy of insurance, issued to or for the benefit of any citizen
> or resident of this state on or after July 1, 1907, by any insurance
> company or association doing business in this state . . . shall contain
> the entire contract of insurance between the parties to the contract,
> and every such contract so issued shall be held as made in this state
> and construed solely according to the laws of this state.

Tenn. Code Ann. § 56-7-102. American Home asserts that the instant insurance policies were issued for the benefit of a citizen of Tennessee. For, as indicated in NGK's complaint and Niwa's declaration, NGK's principal place of business is now in Tennessee. [Court File No. 1 at ¶ 2; Court

-8-

File No. 26, Decl. of Niwa at ¶ 3].[2]  Therefore, under American Home's theory, § 56-7-102 requires that the insurance policies at issue be "construed solely according to the laws of" Tennessee.

American Home's position is unpersuasive for multiple reasons. First, to apply Tenn. Code Ann. § 56-7-102 in such a manner would violate the parties' intention as manifested in the insurance policies. Specifically, two aspects of each insurance policy indicates the parties' intention to be bound by Pennsylvania law: the initial policy and the three subsequent policies were issued and delivered to NGK in Pennsylvania, [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000346, Ex. B at NGK0000287, Ex. C at NGK0000389, Ex. D at NGK000399]; and all four contain endorsements and provisions specifically included to comply with Pennsylvania law, [*Id.*, Ex. A at NGK0000364, Ex. B at NGK0000322-24, Ex. C at NGK0000392-93, Ex. D at NGK0000425-27]. Perhaps equally as persuasive, none of the policies contain any reference to Tennessee.

Second, no Tennessee court has applied Tenn. Code Ann. § 56-7-102 in the manner suggested by American Home, to effectively override Tennessee's traditional choice-of-law rules. Since this statute was enacted in 1907, *see Burns v. Aetna Cas. & Sur. Co.*, 741 S.W.2d 318, 322 (Tenn. 1987), no court addressing the choice-of-law issue in an insurance contract dispute has applied § 56-7-102 instead of the traditional *lex loci* rule. *See Kustoff*, 22 S.W.2d at 358; *Standard Fire*, 972 S.W.2d at 5; *Burns*, 741 S.W.2d at 323; *Hutchison*, 652 S.W.2d at 905; *accord Trinity*

---

[2] Previously, NGK's principal place of business was in Pennsylvania. [Court File No. 26, Decl. of Niwa at ¶ 3]. The date NGK moved its principal place of business to Tennessee is not provided in the record. However, according to NGK's website, the move occurred sometime in 2000. *See* http://www.ngk.co.jp/MTL/english/profile/main.html. Regardless, when NGK moved its principal place of business to Tennessee is not crucial in the instant inquiry: as will be explained more fully below, Tenn. Code Ann. § 56-7-102 does not override Tennessee's choice-of-law rule; and, as previously discussed, the insurance policy and subsequent renewals were issued and delivered to NGK in Pennsylvania.

*Univ.*, 2003 WL 23218046, at *3; *Am. Modern Home*, 2003 WL 21920939, at *2; *Standard Const.*, 2002 WL 1477886, at *5; *Topmost Chem.*, 2002 WL 1477880, at *3.

Specifically illustrative in this regard is the Tennessee Supreme Court's decision in *Burns*, 741 S.W.2d at 318. Pursuant to Tenn. Code Ann. § 56-7-102, the *Burns* plaintiff sought to apply Tennessee substantive law to a dispute concerning an insurance contract executed outside Tennessee. The plaintiff's deceased husband, a Tennessee resident, was an employee of the insured corporation and covered under the employer's vehicle liability policy. *Id.* at 318-19. In turn, the plaintiff argued that the insurance policy was issued "for the benefit" of a Tennessee citizen, thereby requiring application of Tennessee substantive law under § 56-7-102. *Id.* at 322. The Tennessee Supreme Court rejected the plaintiff's argument, finding "that the policy in question was issued in Hartford, Connecticut and delivered to the insured in Providence, Rhode Island through a broker in Boston, Massachusetts. It is not a Tennessee contract . . . ." *Id.*

The Court recognizes that *Burns* is distinguishable from the case at bar. Mr. Burns, the plaintiff's husband, was not the policy holder but was covered under the policy as an employee of the insured. And in rejecting the plaintiff's argument based on Tenn. Code Ann. § 56-7-102 the *Burns* court noted that "Mr. Burns was not a policyholder." *Id.* at 323. Here, the plaintiff, NGK, is the policy holder and, at some point during the policy period, became a Tennessee citizen by moving its principal place of business to Tennessee. Because of this difference, *Burns* does not dispose of the instant issue. Nonetheless, *Burns* is illustrative of Tennessee courts' refusal to apply the substantive law of Tennessee pursuant to § 56-7-102 when the contract was executed outside Tennessee.

-10-

Third, and finally, Tenn. Code Ann. § 56-7-102 was enacted to protect the Tennessee policy holder. *Burns*, 741 S.W.2d at 323 (citing *Virginia Surety Co. v. Knoxville Transit Lines*, 135 F.Supp. 606, 618 (E.D. Tenn. 1955)). More clearly, the statute was not enacted to harm the Tennessee policy holder. However, here, American Home asks this Court to apply § 56-7-102 to the detriment of the policy holder. That such an application violates the very purpose of the statute militates against applying the statute in this case. Accordingly, the Court rejects American Home's efforts to apply Tenn. Code Ann. § 56-7-102 instead of Tennessee's traditional choice-of-law rule.

Given that this Court finds the *lex loci contractus* choice-of-law theory applies, American Home argues that the instant case falls into an exception to that rule. Specifically, American Home asserts that "where the parties envision performance of a contract in a particular place, the rule of *lex loci* does not apply and the court will apply the law of the place of performance." [Court File No. 35 at p. 7]. American Home correctly notes an exception to the *lex loci* rule. However, American Home fails to mention the limitations to this exception, limitations which prove fatal to American Home's argument.

Tennessee's choice-of-law rule is generally the traditional *lex loci contractus* rule. However, "in certain situations, the law of the place of performance will be applied instead of the traditional rule." *Solomon v. FloWarr Mgmt.*, 777 S.W.2d 701, 705 n.5 (Tenn. Ct. App. 1989) (citing *Edgington v. Edgington*, 162 S.W.2d 1082, 1086 (Tenn. 1942)). These situations occur "when the contract is to be performed in another state and the parties envision performance in accordance with that state's laws." *In re Estate of Davis*, No. M2003-02614-COA-R3-CV, 2004 WL 1950729, at *2 (Tenn. Ct. App. Sep. 2, 2004) (citing *Solomon*, 777 S.W.2d at 705). In determining whether this exception should apply, the primary consideration "is whether the contract was made 'in good faith

with reference to the law of some other state,' or 'with [a] view to' the other state." *Id.* (citing *Ohio Cas.*, 493 S.W.2d at 466-67). "[T]he intentions of the parties in this respect [are] to be gathered from the terms of the instruments and all of the attending circumstances . . ." *Ohio Cas.*, 493 S.W.2d at 467 (quoting *First Am. Nat'l Banking of Nashville v. Auto. Ins. Co.*, 252 F.2d 62 (6th Cir. 1958)).

In the instant case, the exception to the traditional *lex loci contractus* rule does not apply. Nothing in any of the insurance policies indicates that the parties envisioned performance in accordance with the laws of Tennessee. Nor do the policies ever refer to the law of Tennessee. In contrast, based on the terms of the policies, the parties intended to be governed by Pennsylvania law. For, as noted above, each of the policies contain endorsements and provisions specifically included to comply with Pennsylvania law. [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000364, Ex. B at NGK0000322-24, Ex. C at NGK0000392-93, Ex. D at NGK0000425-27]. Accordingly, American Home's effort to avoid Tennessee's traditional *lex loci contractus* rule is to no avail, and the Court will apply the substantive law of Pennsylvania.

### B.        American Home's Duties Pursuant to the Insurance Policies

Pennsylvania law provides some general principles underpinning the analysis of insurance contract disputes. "[I]nterpreting [an insurance] contract is generally performed by a court rather than by a jury." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (brackets in original). The goal in interpreting a contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Id.* Any ambiguities in the policy "must be construed in favor of the insured because the insurer writes the contract, but a provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe differing

meanings to it." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *accord Harleysville*, 735 A.2d at 106.

Relevant to the specific inquiry, Pennsylvania law differentiates between the duty to defend and the duty to indemnify. "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog, Switch*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)); *accord Erie Ins. Exch. v. Muff*, 851 A.2d 919, 925-26 (Pa. Super. Ct. 2004). An insurer has a duty to defend "whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch*, 193 F.3d at 746 (citing *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355 (Pa. Super. Ct. 1996)); *accord Muff*, 851 A.2d at 926. "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.* (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). In contrast, "[t]he duty to indemnify is a conditional obligation. . . . aris[ing] only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy." *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 434 (Pa. Super. Ct. 2002).

From these principles, it is quite apparent that "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify." *Id.*; *accord J.H. France Refractories v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). For, "there may be a duty to defend without a duty to indemnify." *Id.* Consequently, when "there are issues to be decided in the future which may or may not implicate indemnity," "[t]he decision regarding the duty to indemnify can await the resolution of the

-13-

underlying action." *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1142 (Pa. Super. Ct. 2003).

Turning to the instant case, NGK seeks a declaratory judgment that American Home has a duty to defend NGK in the underlying action and indemnify NGK for any resulting damages based on four commercial general liability policies. Each policy contains the following relevant provisions:

> Coverage B Personal and Advertising Injury Liability
> 1. Insuring Agreement
>> a. We [American Home] will pay those sums that the Insured [NGK] becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .
>> * * *
>> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

[Court File No. 26, Decl. of Niwa, Ex. A at NGK0000350, Ex. B at NGK0000305-06, Ex. D at NGK0000408-09].[3]

The policies also contain the following relevant exclusions. All four policies exclude from coverage "'Personal and advertising injury' arising out of a criminal act committed by or at the

---

[3] When citing to relevant provisions of the policies, there will be no citation to the 2001-02 policy, the policy contained at Exhibit C of the Declaration of Niwa, Court File No. 26. As previously noted, the 2001-02 policy was simply an adoption of the 2000-01 policy contained at Exhibit B of the Declaration of Niwa. Consequently, the 2001-02 policy contains no specific provisions of its own for the Court to cite, but rather is identical to the 2001-01 policy.

direction of any insured." [*Id.*, Ex. A at NGK0000350, Ex. B at NGK0000306, Ex. D at NGK0000409]. In addition, the final three policies—the 2000-01 policy, the 2001-02 policy, and the 2002-03 policy—exclude from coverage "'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." [*Id.*, Ex. B at NGK0000306, Ex. D at NGK0000409].[4] The first policy contains no such exclusion.

Each policy also contains the following relevant definitions:

> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your [NGK's] goods, products or services for the purpose of attracting customers or supporters.
> * * *
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> * * *
>> vi. The use of another's advertising idea in your "advertisement"; or
>> vii. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[Court File No. 26, Decl. of Niwa, Ex. A at NGK0000355-57, Ex. B at NGK0000312-14, Ex. D at NGK0000415-17].

### 1. American Home's Duty to Defend

To discern whether American Home has a duty to defend NGK under the terms of these insurance policies, the Court must determine whether the underlying action may potentially come within the insurance coverage. *Frog, Switch*, 193 F.3d at 746; *Muff*, 851 A.2d at 926; *Mistick, Inc.*

---

[4] In its memorandum American Home contends that this trademark infringement exclusion is only included in the final policy. [Court File No. 35 at 5 n.1]. However, American Home provides no factual support for this contention. The only version of the policies provided to the Court indicates that the final three policies contain the trademark infringement exclusion. [*See* Court File No. 26, Decl. of Niwa, Ex. B at NGK0000306, Ex. D at NGK0000409].

-15-

*v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. Ct. 2002). In so determining, the Court must take the factual allegations of the underlying complaint as true, and liberally construe those allegations in favor of the insured. *Id.*; *Muff*, 851 A.2d at 926; *Biborosch*, 603 A.2d at 1052.

The underlying complaint alleges, and the Court accepts as true, the following facts. In or about 1996, Cleveland Golf Company ("Cleveland") and NGK entered into a business relationship for the research and development of beryllium copper and beryllium nickel golf club heads. [Court File No. 26, Decl. of Niwa, Ex. E, Underlying Complaint at ¶ 22]. At that time Cleveland contracted with NGK to produce golf club heads bearing Cleveland's federally-registered trademarks. [*Id.* at ¶ 23]. Cleveland terminated this contract at the end of 1997 or beginning of 1998 and instructed NGK to destroy any golf club heads that were produced by NGK but not purchased by Cleveland. [*Id.* at ¶¶ 26-27]. In December 2000 a former NGK employee sent an e-mail to Cleveland, offering for sale a substantial number of Cleveland golf clubs in his possession, claiming that NGK offered such clubs "as gifts to NGK customers and acquaintances." [*Id.* at ¶ 28]. Based on this e-mail, Cleveland contacted the authorities to commence an investigation into NGK's activities. [*Id.* at ¶ 29]. The investigation determined that, following the termination of the contract, NGK continued to produce Cleveland golf club heads. [*Id.* at ¶ 31]. NGK also shafted the golf club heads to create finished golf clubs. [*Id.* at ¶ 32]. Critically, NGK used these golf club heads for its benefit, "either through sale or distribution," and NGK provided the finished golf clubs "to NGK customers as gifts or incentives for their continued business with NGK." [*Id.* at ¶¶ 39-40]. Based on these facts, Cleveland brought claims for trademark infringement, conversion, and negligent supervision. [*Id.*].

American Home has a duty to defend this underlying action if these facts potentially constitute an advertising injury, as defined in the insurance policies. NGK contends that the underlying facts satisfy two policy definitions of an advertising injury. Specifically, NGK argues that the underlying action constitutes, at least potentially, either: an injury arising out of the use of another's—in this case Cleveland's—advertising idea in NGK's advertisement; or an injury arising out of NGK's infringement of Cleveland's copyright, trade dress or slogan in NGK's advertisement. [Court File No. 26 at 15]. American Home's multi-faceted response contends that the underlying facts do not fit either definition and, in any event, coverage is barred under two policy exclusions.

### a. Use of Cleveland's Advertising Idea in NGK's Advertisement

NGK first contends that the underlying action constitutes an injury arising out of the use of another's advertising idea in its advertisement. The facts of the underlying action allege a claim for trademark infringement: NGK produced Cleveland golf club heads and golf clubs, using Cleveland's trademarks, beyond the termination of the business relationship; further, NGK either sold or distributed the golf club heads and provided the golf clubs to NGK customers as gifts or incentives. Accordingly, whether these facts potentially constitute an advertising injury under the instant definition depends on the resolution of two issues: first, whether the use of Cleveland's trademark is the use of another's advertising idea; and if so, whether NGK used Cleveland's trademark in an advertisement.

### i. Whether a Trademark is an Advertising Idea

According to Pennsylvania law, the use of another's trademark constitutes the use of another's advertising idea. In interpreting and applying Pennsylvania law, the Third Circuit recognizes that a "trademark can be seen as an advertising idea: It is a way of marking goods so that

-17-

they will be identified with a particular source." *Frog, Switch*, 193 F.3d at 749. *Frog, Switch*'s

recognition finds support, albeit in dicta, in *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*: "It makes

sense that a trademark infringement action would be covered by an insurance policy that applies to

'misappropriation of advertising ideas' because a trademark—like the brand name DRAKKAR

NOIR—is an advertising idea that may be created and 'owned,' and thus wrongfully taken or

'stolen.'" 735 A.2d 712, 716 (Pa. Super. 1999); *accord id.* 716 n.2. Based on *Sorbee*, and directly

answering the instant issue, the Third Circuit specifically "h[e]ld that when a complaint alleges that

an insured misappropriates and uses trademarks or ideas in connection with marketing and sales and

for the purpose of gaining customers, the conduct constitutes 'misappropriation of an advertising

idea or style of doing business' under Pennsylvania law." *Cat Internet Svs., Inc. v. Providence

Washington Ins.*, 333 F.3d 138, 142 (3d Cir. 2003).

Recognizing that the facts of the underlying action allege a trademark infringement claim,

American Home contends that trademarks do not constitute advertising ideas. In support, American

Home presents three arguments: first, the decisions cited above do not hold that trademarks are

advertising ideas; second, that a trademark is not an advertising idea, pursuant to *Sholodge, Inc. v.

Travelers Indem. Co. of Ill.*, 168 F.3d 256 (6th Cir. 1999); and third, that to construe "use of

another's advertising idea" to include use of another's trademark violates Tennessee law. The Court

finds each argument unpersuasive.

First, American Home argues that the decisions cited above, interpreting Pennsylvania law,

do not hold that trademarks constitute advertising ideas. With respect to *Frog, Switch* and *Sorbee*,

American Home is correct: *Frog, Switch* holds that the underlying complaint did not allege

trademark infringement, 193 F.3d at 749; and *Sorbee* holds that the underlying complaint did not

allege use of another's advertising idea where, for example, it did not allege use of another's trademark. 735 A.2d at 714-16. Nonetheless, as indicated above, both courts recognize that trademarks are an advertising idea. Regarding *Cat*, American Home is simply wrong: *Cat* specifically holds that use of another's trademark constitutes misappropriation of an advertising idea. Consequently a trademark is an advertising idea under Pennsylvania law. 333 F.3d at 142.

Second, American Home argues that trademarks are not advertising ideas under *Sholodge*, 168 F.3d at 256. In this regard, American Home is correct: *Sholodge* holds that service marks—which are not materially distinguishable from trademarks for the instant purposes—are not advertising ideas. 168 F.3d at 259-60 (citing *Advance Watch Co. Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir. 1996)). However, in so holding, *Sholodge* interprets and applies Tennessee law. *Id.* As determined above, Tennessee law is not applicable to the instant inquiry. Rather, Pennsylvania law applies to this action, and under Pennsylvania law—contrary to Tennessee law—trademarks are advertising ideas. *See Cat*, 333 F.3d at 142.

Third, American Home contends that to construe the policy, and particularly the phrase "use of another's advertising idea," to include trademark infringement violates Tennessee law. For, as American Home argues, under Tennessee law an insurance agreement sets the "outer limits" of an insurer's liability. *Standard Fire*, 972 S.W.2d at 7. And, as American Home's argument goes, because the policy does not specifically include a trademark as an advertising idea, to construe the policy to include such exceeds its "outer limits." American Home once again correctly states Tennessee law but, yet again, Tennessee law does not apply to the instant inquiry. As discussed above, Pennsylvania law includes a trademark as an advertising idea. *Cat*, 333 F.3d at 142; *Frog, Switch*, 193 F.3d at 749; *Sorbee*, 735 A.2d at 716.

### ii.  **Whether NGK used the Trademark in an Advertisement**

Both parties agree that the allegations of the underlying action are insufficient to determine whether NGK actually used Cleveland's trademark in an advertisement.  However, as noted above, in determining whether American Home has a duty to defend NGK in the underlying action, the inquiry is whether the facts potentially come within coverage.  *See Frog, Switch*, 193 F.3d at 746; *Muff*, 851 A.2d at 926; *Mistick*, 806 A.2d at 42.  Consequently, the instant issue is whether the facts of the underlying action potentially indicate that NGK used Cleveland's trademark in an advertisement.

All four policies define an advertisement as follows: "'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about [NGK's] goods, products or services for the purpose of attracting customers or supporters." [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000355; Ex. B at NGK0000312; Ex. D at NGK0000415].  NGK argues that it satisfies this definition in two manners: first, Brady's e-mail to Cleveland offering the golf clubs for sale; and second, NGK's policy of selling these clubs or providing these clubs to customers as gifts and incentives.  American Home contends that neither of these constitutes an advertisement, arguing that there was no notice that was broadcast or published to the general public or a specific market sector; that any such notice was not on behalf of NGK but rather on behalf of Brady and Manikas; and that any such notice was not about NGK's products but rather about Cleveland's products.

Brady's e-mail to Cleveland in December 2000 offering for sale the infringing golf clubs does not even potentially constitute an advertisement under the terms of the policies.  Even assuming Brady's e-mail constitutes a notice broadcast to a specific market segment about NGK's products

or services, the e-mail was not for the purpose of attracting customers or supporters to NGK. At the time he sent the e-mail, Brady was no longer employed by NGK. And by sending the e-mail, Brady intended to sell the golf clubs and keep the revenue for himself. Certainly the e-mail was not sent to attract customers and supporters to NGK. Consequently, the e-mail does not even potentially constitute an advertisement, as defined by the policies.

NGK's second contention—that its policy of selling the infringing clubs or providing them to customers as gifts and incentives potentially constitutes an advertisement—is a much closer question. NGK's practice in this regard certainly targeted a specific market segment: potential NGK customers; it concerned NGK's goods, products, or services by showcasing NGK's ability with golf club heads in particular and beryllium alloy in general; and it was definitely for the purpose of attracting customers and supporters to NGK. Therefore, the critical issue is whether this practice involved a notice that was broadcast or published. Though a close question, the Court concludes that NGK's practice in this regard potentially involved a notice that was broadcast or published. Because NGK potentially used Cleveland's trademark in an advertisement, American Home has a duty to defend NGK in the underlying action.

### b. Infringement of Cleveland's Copyright, Trade Dress, or Slogan

Next, NGK contends that the facts of the underlying action potentially constitute an injury arising from NGK's infringement of Cleveland's trade dress in its advertisement. The Court disagrees. "'[T]rade dress' includes the total look of a product and its packaging and even includes the design and shape of the product itself. Trade dress can encompass either part or all of the total image or overall impression created by a product or its packaging." 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 8:4 (2004).

-21-

Based on this definition, the Court finds that the facts of the underlying action do not potentially constitute an injury arising from NGK's infringement of Cleveland's trade dress. The underlying complaint does not refer to the total look of Cleveland's product; there is no reference to the packaging, the design or the shape of the golf club head or the golf club; and there is no reference to the total image or overall impression of Cleveland's golf club head or golf club. Instead, Cleveland's complaint specifically alleges trademark infringement and refers only to NGK's use of Cleveland's trademark on the golf club heads. Consequently, the underlying action does not even potentially involve a claim for infringement of Cleveland's trade dress.

### c. **Policy Exclusions**

Finally, American Home contends that it does not have a duty to defend NGK in the underlying action because coverage is excluded under two policy provisions. Specifically, American Home argues that coverage is barred under exclusions for criminal conduct and trademark infringement. Where, as here, an insurer disclaims its duty to defend based on a policy exclusion, "the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Const.*, 735 A.2d at 106 (citing *Erie Ins. Exch.*, 533 A.2d at 1366); *accord J.B. Johnson*, 806 A.2d at 434.

### i. **Exclusion for Criminal Conduct**

American Home argues that NGK is barred from coverage under a provision excluding coverage for "personal and advertising injury . . . arising out of a criminal act committed by or at the direction of any insured." [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000350, Ex. B at NGK0000306, Ex. D at NGK0000409]. Specifically, American Home contends that any advertising injury to NGK is due to the criminal actions of David Brady and John Manikas. Based on their

conduct relating to the instant case, both Brady and Manikas pled guilty to felony theft in 2002. [Court File No. 1 at ¶¶ 17-18]. In response, NGK's argument is two-fold: Endorsement #5 to the initial policy, the 1999-00 policy, effectively deleted the criminal conduct exclusion, [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000380]; moreover, American Home fails to satisfy its burden of proving that the criminal conduct exclusion applies in the instant case such that there is no potential for the underlying action to come within the insurance coverage.

To begin, the parties disagree as to whether Endorsement #5 deleted the criminal conduct exclusion from the 1999-00 policy. NGK correctly argues that the text of Endorsement #5 deletes the criminal conduct exclusion from the 1999-00 policy: the text specifically deletes the exclusion found in Section I, Coverage B, Exclusion a(4) which, in the 1999-00 policy, is the criminal conduct exclusion. [*Id.*]. American Home counters by contending that Endorsement #5 deleted the contractual liability exclusion, which is Exclusion a(5) in the 1999-00 policy. As evidence of this interpretation, American Home points to the title of the endorsement, "Deletion of Contractual Liability Exclusion." [*Id.*]. According to American Home, the text of Endorsement #5 inadvertently refers to Exclusion a(4)—the criminal conduct exclusion—because the endorsement was intended to apply to a different insurance form, or "jacket," than the one provided to NGK.

Given the conflicting text and title of Endorsement #5, it is ambiguous which exclusion—the criminal conduct exclusion or the contractual liability exclusion—the endorsement was intended to delete. Any ambiguities "must be construed in favor of the insured because the insurer writes the contract." *Frog, Switch*, 193 F.3d at 746. Consequently, the Court relies on the text of the endorsement and concludes that Endorsement #5 deletes the criminal conduct exclusion from the 1999-00 policy.

-23-

Given that the criminal conduct exclusion was deleted from the 1999-00 policy, American Home cannot exclude from coverage an advertising injury arising from a criminal act committed from January 1, 1999, to January 1, 2000. In other words, that the criminal conduct exclusion was deleted in the 1999-00 policy is only important if the criminal acts occurred during the period covered by that policy. Based on the allegations in the underlying action, it is unclear when the criminal acts of Brady and Manikas occurred, but they certainly occurred before December 2000 as that is when Brady offered the infringing clubs for sale to Cleveland. Given the lack of specificity in the underlying complaint, the criminal acts potentially occurred during the 1999-00 policy period. Consequently, American Home cannot disclaim its duty to defend NGK in the underlying action based on the criminal conduct exclusion.

Even assuming Endorsement #5 does not delete the criminal conduct exclusion or assuming that Brady's and Manikas' criminal acts occurred outside the 1999-00 policy period, American Home still does not satisfy its burden. Specifically, American Home has not shown that the criminal conduct exclusion applies to prevent the underlying action from potentially coming within coverage. The criminal conduct exclusion bars from coverage "'Personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." [Court File No. 26, Decl. of Niwa, Ex. A at NGK0000350, Ex. B at NGK0000306, Ex. D at NGK0000409].

American Home fails to show that Brady's and Manikas' criminal acts were committed by or at the direction of an insured. There is no evidence, nor any allegation, that Brady and Manikas committed their criminal acts at the direction of an insured. And Brady and Manikas were not insureds, under the terms of the insurance policies, at the time they committed their criminal acts. According to the policies, NGK's employees are insureds but "only for acts within the scope of their

employment by [NGK] or while performing duties related to the conduct of [NGK's] business."

[cite]. Brady's and Manikas' criminal acts—felony theft of property from NGK—were not acts

within the scope of their employment. And Brady and Manikas did not commit these crimes while

performing duties related to the conduct of NGK's business. Consequently, Brady and Manikas

were not insureds under the terms of the policy when they committed their criminal acts.

Further, American Home fails to establish that NGK's advertising injury arises solely out

of the criminal acts of Brady and Manikas. Brady and Manikas committed felony theft. The

allegations of the underlying complaint indicate that NGK's advertising injury arises not from felony

theft, but rather from NGK's unauthorized production of golf clubs bearing Cleveland's federally-

registered trademark and providing these clubs to friends and customers. For these reasons, the

underlying action may potentially fall outside the criminal conduct exclusion but within policy

coverage. Therefore, American Home fails to satisfy its burden and cannot disclaim its duty to

defend NGK under this exclusion.

### ii. Exclusion for Trademark Infringement

Next, American Home argues that NGK is barred from coverage under a policy provision

excluding coverage for "personal and advertising injury arising out of the infringement of copyright,

patent, trademark, trade secret or other intellectual property rights." [Court File No. 26, Decl. of

Niwa, Ex. B at NGK0000306, Ex. D at NGK0000409]. NGK responds that American Home still

has a duty to defend because the facts of the underlying action potentially occurred during the period

covered by the 1999-00 policy, a policy which does not contain an exclusion for trademark

infringement. Further, NGK claims that the underlying action may potentially fall within an

exception to this exclusion.

NGK first contends that American Home has a duty to defend because the facts of the underlying action potentially occurred during a period in which there was no exclusion for trademark infringement. The trademark infringement exclusion in not included in the first policy, the 1999-00 policy. Consequently, if the trademark infringement occurred during the 1999-00 policy period, American Home cannot exclude from coverage any resulting advertising injury. Based on the allegations in the underlying action, the Court cannot now determine when the facts forming the basis of the trademark infringement claim occurred. In other words, the underlying complaint is unclear. Nonetheless, the instant issue is whether the underlying facts potentially occurred during this period. Given the lack of specificity in the underlying complaint, such is possible. Consequently, American Home fails to satisfy its burden and cannot disclaim its duty to defend under the exclusion for trademark infringement.

As for NGK's contention that the underlying action may potentially fall within an exception to this exclusion, the Court disagrees. This exception provides that the trademark infringement "exclusion does not apply to infringement, in [NGK's] 'advertisement', of copyright, trade dress or slogan." [Court File No. 26, Decl. of Niwa, Ex. B at NGK0000306, Ex. D at NGK0000409]. Pursuant to this exception, NGK contends that the underlying action may potentially constitute infringement of Cleveland's trade dress. However, the Court disagrees because, as discussed above, the underlying action does not even remotely discuss Cleveland's trade dress, focusing instead on Cleveland's trademarks.

In sum, though a close question, the Court finds that American Home has a duty to defend NGK in the underlying action. The underlying action potentially constitutes an advertising injury arising from NGK's use of Cleveland's advertising idea—Cleveland's trademark—in its

advertisement. Further, American Home fails to satisfy its burden of proving a policy exclusion applies such that the underlying action does not potentially fall within the ambit of coverage. Accordingly, American Home has a duty to defend NGK in the underlying action, and American Home's failure to do so constitutes a breach of contract. NGK's motion for summary judgment to this extent will be **GRANTED** and American Home's similar motion will be **DENIED**.

## 2. American Home's Duty to Indemnify

That American Home has a duty to defend NGK in the underlying action does not mean, concomitantly, that American Home has a duty to indemnify NGK for any resulting damages. For the issue in determining whether American Home has a duty to defend is distinct from whether American Home has a duty to indemnify: in the former the inquiry is whether the injury—i.e. the underlying action—may potentially come within policy coverage; in the latter the inquiry is whether the injury actually comes within coverage. *See Allstate Ins. Co. v. Brown*, 834 F.Supp. 854, 857 (E.D. Pa. 1993). As a result, "there may be a duty to defend without a duty to indemnify." *J.B. Johnson*, 806 A.2d at 434; *accord J.H. France Refractories*, 626 A.2d at 510 (citing *Erie Ins. Exch.*, 533 A.2d at 1368).

As noted above, "[t]he duty to indemnify is a conditional obligation. . . . aris[ing] only if, after trial on the third-party claim, it is determined that the loss suffered is covered by the terms of the policy." *J.B. Johnson*, 806 A.2d at 434. Consequently, when "there are issues to be decided in the future which may or may not implicate indemnity," "[t]he decision regarding the duty to indemnify can await the resolution of the underlying action." *Pressley*, 817 A.2d at 1142. In this case, such issues exist, and the Court will await resolution of the underlying action to determine

American Home's duty to indemnify NGK. Accordingly, both NGK's and American Home's motions for summary judgment in this regard will be **DENIED**.

## C.   Attorney's Fees and Costs

In moving for summary judgment NGK also seeks to recover its attorney's fees and costs incurred in the instant action and in defending the underlying action. After reviewing the legal landscape pertinent to this issue, the Court finds that NGK is entitled to its costs and fees already incurred in defending the underlying action. However, NGK is not entitled to its costs and fees incurred in the pursuing the instant declaratory judgment action.

"When an insurer erroneously denies its duty to defend, fulfillment of the duty requires the insurer to pay for any defense costs already incurred" in defending the underlying action. *Kiewit Eastern Co., Inc. v. L&R Const. Co, Inc.*, 44 F.3d 1194, 1205 (3d Cir. 1995) (citing *Carpenter v. Federal Ins. Co.*, 637 A.2d 1008, 1013 (Pa. Super. Ct. 1994), *Imperial Casualty & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 n.2 (3d Cir. 1988)). For, "[a]n insurer who refuses to defend its insured from the outset does so at its peril." *Muff*, 851 A.2d at 926; *accord Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219 (Pa. Super. Ct. 2002); *Snyder Heating Co., Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 715 A.2d 483, 492 (Pa. Super. Ct. 1998). The costs to which the insured is entitled include attorney's fees already incurred in defending the underlying action. *Kiewit*, 44 F.3d at 1205. As the Court has already determined that American Home has a duty to defend NGK in the underlying action, NGK is entitled to its costs and attorney's fees already incurred in defending that action.

However, recovering costs and fees incurred in pursuing this declaratory judgment action is a different issue. "[A]n insured who is compelled to bring a declaratory judgment action to

establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, in bad faith, refused to defend the action brought by the third party." *Kelmo Enter. v. Commercial Union Ins.*, 426 A.2d 680, 685 (Pa. Super. Ct. 1981); *accord Regis Ins. Co. v. Wood*, 852 A.2d 347, 351 (Pa. Super. Ct. 2004); *Carpenter*, 637 A.2d at 1013; *Kiewit*, 44 F.3d at 1205-06. In the instant case there is no evidence that American Home's refusal to defend NGK in the underlying action was in bad faith. Indeed, NGK voluntarily dismissed its statutory bad faith claim against American Home. [Court File No. 31]. And American Home presents reasonable, meritorious, arguments that it does not have a duty to defend the underlying action, and the resolution of that issue was a close question. Consequently, American Home's refusal to defend the underlying action was not in bad faith, and NGK is not entitled to recover its costs and attorney's fees incurred in pursuing the instant declaratory judgment action.

A separate order shall enter.


_____
*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE